## Mason v. Wilkes-Barre Twp., Appellant.

*Taxation—Townships—Illegal assessments.*

Where township commissioners assess taxes to be expended in the discharge of debts of a previous year some of which were incurred in violation of the provisions of the law, they will be enjoined from collecting an amount sufficient to pay the illegal debts although the money to be collected for such payment was not so designated in the budget, but was included in other funds not necessary for the purpose for which they were apparently intended.

If, in such a case, it appears that an act of assembly had extended the fiscal year of the township during which the alleged illegal indebtedness had been incurred to thirteen months, and that some of the illegal indebtedness had been incurred for the current expenses of the additional month, the commissioners may appropriate in a subsequent year in a lawful manner, a sum sufficient to discharge any outstanding indebtedness of the township arising from the fact that the fiscal year in question included thirteen months instead of twelve.

Argued March 7, 1917. Appeal, No. 52, March T., 1917, by defendant, from decree of C. P. Luzerne Co., March T., 1914, No. 4, on bill in equity in case of Harry C. Mason v. Township of Wilkes-Barre, Patrick Nealon et al., Commissioners, and M. F. Shannon, Treasurer. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Bill in equity for an injunction.

FULLER, P. J., filed the following opinion:

This case was fully heard on the motion to continue preliminary injunction and by agreement is now submitted for final adjudication on the testimony then taken.

By our decision of that motion, filed July 23, 1914, we continued until final hearing, or until further order, the injunction granted at the suit of a taxpayer to restrain (1) collection of taxes for 1914 in excess of 5.2 mills on a valuation of $5,106,815, (2) issuing orders for the

amounts of any hiring, contracts or purchases subse-
quent to the exhaustion of certain appropriations for
1913.

Nothing has been since adduced by evidence or argu-
ment to alter or affect the conclusions which the court
announced at that time and which at this time need only
be restated, with minor modification to meet the require-
ments of a formal adjudication.

Accordingly we state as follows the

### FACTS:

1. The Township of Wilkes-Barre, defendant, is one
of the first class, and its board of commissioners, defend-
ants, in December, 1912, made estimates and appropri-
ations for the fiscal year beginning that month, as fol-
lows:

| | |
|---|---:|
| Supervisors' Fund, | $ 3,200.00 |
| Light and Water Fund, | 4,350.00 |
| Secretary's Salary Fund, | 650.00 |
| Peace Officer's Fund, | 800.00 |
| Board of Health Fund, | 1,200.00 |
| Interest Fund, | 2,000.00 |
| Room Rent Fund, | 440.00 |
| Fire Chief's Fund, | 100.00 |
| Walnut Street Improvement Fund, | 6,000.00 |
| General Fund, | 5,000.00 |
| Total, | $23,740.00 |

The supervisors' fund being intended to pay for the
supervision of work upon the highways, and the general
fund being intended to provide for all other expendi-
tures connected with the highways and for sundry mat-
ters not specified.

To meet these estimates a tax levy of 10 mills was
made upon a valuation of $2,164,852.

2. On or about October 2, 1913, the appropriation to

the general fund aforesaid became exhausted by the drafts upon it, and $350 was transferred thereto from the supervisors' fund; on or about October 23, 1913, that addition to the general fund became exhausted and $100 was transferred thereto from the board of health fund; on or about November 8, 1913, that addition also to the general fund became exhausted and $400 was transferred thereto from the light and water fund, which addition in turn also became exhausted like the others by the drafts upon it.

3. After the said transfers of $350 to the general fund from the supervisors' fund, the latter became exhausted by the drafts upon it and $100 was transferred thereto from the board of health fund.

4. The changes of appropriation above stated may be tabulated thus:

General fund, $5,000 original appropriation; transferred plus $850; total, $5,850.

Supervisors' fund, $3,200 original appropriation; minus $350; transferred plus $100; total, $2,950.

Board of health fund, $1,200 original appropriation; minus $200 transferred; total, $1,000.

Light and water fund, $4,350 original appropriation; minus $400 transferred; total, $3,950.

None of the foregoing transfers were made by ordinance adopted and advertised according to law, setting out in detail the reasons for and character of such change, as provided in Sec. 3, Act 27th April, 1909, P. L. 198, but by simple unposted resolution of the board.

5. After the exhaustion of the general fund and the supervisors' fund the board caused work to be done, materials to be bought and contracts to be made amounting to $1,150.67, chargeable to one or the other of said funds.

Said amount included $262.50, salary for November, and $273, salary for December, 1913, of the supervisors hired at the beginning of the year on certain wages per diem.

The balance of the amount embraced chiefly the cost

of labor and materials used in abating a certain nuisance, to wit: drawing off a certain accumulation of stagnant water by constructing a permanent drain, without any special resolution or authorization of the board, formal or informal, so far as appears in the testimony.

6. After the deduction of withdrawals, including transfers, and of unpaid liabilities, the supervisors' fund becomes depleted to the extent of $281.50, the light and water fund to the extent of $331.50, the board of health fund to the extent of $173.75; while the general fund, after being inflated by transfers $850, is over-drawn by orders and unpaid liabilities to the further amount of $546.03, making a total overdraft of $1,396.03.

7. On January 12, 1914, the board by ordinance made estimates and appropriations for the fiscal year 1914, aggregating $27,710, inter alia, road work fund $8,500, general fund $3,500; the road work fund being intended to embrace the pay of supervisors, which was a separate fund in 1913, and the general fund being intended to embrace an unspecified multiplicity of items, to wit: lumber, tools, engineering, preparation of duplicates, house cleaning, advertising, hardware, auditors' fees, attorney's fees, fighting fires, index boards, street signs, repair work on hose house, team work on roads, etc., etc.

These estimates of $8,500 and $3,500 embraced the excess amount of $1,150.67 mentioned in 5 supra.

To meet the aggregate aforesaid, the board by the same ordinance levied a tax of six mills on the valuation of $5,106,815.

LAW.

1. The injunction heretofore granted should be made permanent.

2. The prothonotary should enter and give notice of the following decree nisi:

Now, May 14, 1915, this cause came on to be heard at this term, and was argued by counsel, and upon consid-

Opinion of Court below—Opinion of the Court. [68 Pa. Superior Ct.

eration thereof by the court, it is ordered, adjudged and decreed that the defendants be perpetually enjoined from (1) collecting taxes for 1914 in excess of 5.2 mills on a valuation of $5,105,815, (2) issuing orders for the amounts of any hiring, contracts, or purchases subsequent to the exhaustion of said appropriations for 1913.

*Error assigned* was the decree of the court.

*M. J. Mulhall,* for appellants, cited: Bailey v. Philadelphia, 167 Pa. 569; Justice v. Philadelphia, 37 Pa. Superior Ct. 267.

*John D. Farnham,* for appellee.

OPINION BY HEAD, J., October 8, 1917:

At the time of the argument of this appeal in open court it was not clear the question involved was anything more or anything less than an academic one. The doubt yet remains whether any decree we enter will accomplish more than to dispose of the costs.

The appeal was filed by a taxpayer of the defendant township which is one of the first class. It sought to restrain the township authorities from collecting the full amount of the taxes they undertook to assess on the ground that a portion of the money thus to be collected was to be expended for an illegal purpose. An answer was filed, testimony was taken, and the learned court below continued, until final hearing, the preliminary injunction which had been granted. Later on this injunction was made perpetual. From that decree this appeal followed.

It ought to go without saying that it is no part of the functions of the courts to perform those administrative duties which by law are committed to other officers. But it should be equally clear that the public moneys are neither to be collected by taxation nor expended at the mere whim or caprice of those who have been selected to

perform such important duties in the manner provided by law.   If in the performance of such duties it should be made to appear that the plain provisions of the statutes on the subject have not been complied with, then it would not only be the right but the duty of a court in a proper proceeding to restrain such lawless conduct.

We think it reasonably apparent, from an examination of the record, the board of commissioners of the defendant township undertook to so manage the funds in their hands as to bring about a clear violation of the provisions of the statutes.   The Acts of April 27, 1909, P. L. 198, and of June 3, 1911, P. L. 626, very clearly designated the powers and duties of the board and its members.   There should be no room for doubt that these statutory provisions are wise ones.   They invest the board of commissioners with ample power to do everything reasonably necessary in the administration of the affairs of the township but they also carefully and distinctly prescribe the manner in which these things must be done.   If the board, in its estimates for the necessities of the coming year, should happen to provide more than was necessary in one particular fund and less than was required in another, the statute declares how the surplus money may be lawfully transferred from one fund to the other.   The learned court below finds from the evidence these statutory requirements were overlooked or ignored.   The law also provides how an indebtedness, above the appropriation, honestly incurred in one year may be taken care of in the estimate for a succeeding year.   The cause of the trouble in the present case arose from the fact that in the budget of 1914 an attempt was made to collect a sum of money, part of which was to be expended in the discharge of debts of the previous year, some of which at least were incurred in violation of the provisions of the law.   The money thus to be collected and applied was not designated in the budget as money to be applied to such an expenditure but the amount thereof was included in other funds

not necessary for the purpose for which they were apparently intended. The learned court below therefore restrained the commissioners from collecting all of the sum of money contemplated by them and reduced the amount of the levy for that year enough to exclude what had been determined to be the illegal expenditure.

There is only one respect in which we have concluded to modify the decree entered. By the Act of June 5,1913, P. L. 424, the fiscal year for which the appropriation was made in December, 1912, was extended to January, 1914, instead of ending as theretofore in December, 1913. As we understand it, some part of the alleged illegal indebtedness may have been incurred for the current expenses of the additional month thus added to that particular fiscal year. If that be so, we see no good reason why the board of commissioners may not, in a subsequent year, provide for the payment of the moneys necessarily expended to carry the township over so as to make its fiscal year conform with the requirements of the Act of 1913. But it must be done in the manner and form provided by the statute. We have therefore determined to affirm the decree of the learned court below with the understanding that our decree shall not be construed to prohibit the present or a future board from appropriating, in a lawful manner, a sum sufficient to discharge any outstanding indebtedness of the township arising from the fact that the fiscal year of 1914, by the operation of the statute, included thirteen months instead of but twelve. With this modification of the decree it is affirmed. The cost of this appeal to be paid by the appellees.