## Carver et al. v. Hanover Township School District et al.

*J. H. Oliver, Gilbert S. McClintock* and *John D. Farnham,* for plaintiffs.

*M. F. McDonald, Robert J. Doran* and *Donald O. Coughlin,* for defendants.

VALENTINE, J., August 12, 1932.—This is a taxpayers' bill, praying that the levy adopted by the school directors of the defendant school district for the fiscal year beginning July, 1932, and ending July, 1933, be reduced from 13.1 mills to 9.3 mills.

The necessity for a prompt decision has required us to dispose of the application in the absence of the record of the testimony; nor does the time at our disposal permit an extended discussion of the various items attacked.

Plaintiffs' contentions may be summarized with the statement (a) that in the preparation of the budget the defendant officials failed to take into consideration certain assets of the school district, and (b) that certain positions designated in the budget are unnecessary and, in other instances, the amounts designated are unreasonable and excessive.

The relief sought is based upon the allegations that the defendant directors "have abused the discretion reposed in them by law, have acted arbitrarily and capriciously, have been actuated by motives other than the public welfare, and in preparing said budget and making said levy have not acted in good faith, and, in effect, have committed a fraud on the taxpayers of said school district."

Abuse of discretion usually springs from improper influences, a disregard of duty, or a violation of law: Hibbs v. Arensberg, 276 Pa. 24, 27. If the facts admit of no other conclusion than that the determination of the board has been influenced by other considerations than the public interest, no matter what these may be, the law will regard it as an abuse of discretion: Lamb v. Redding, 234 Pa. 481, 484.

The preparation of the budget is provided for by section 563 of the School Code, as amended, which stipulates:

"The board of school directors of each school district of the . . third . . class shall, annually, at or before the time of levying the annual school taxes, prepare a budget of the amount of funds that will be required by the school district in its several departments for the following fiscal year. Such budget shall be apportioned to the several classes of expenditures of the district as the board of school directors thereof may determine; and thereafter no moneys apportioned for any class of expenditures shall be used for purposes other than designated for said class in said budget until after affirmative action by the board of directors at a legal meeting. The total amount of such budget shall not exceed the amount of funds, including the proposed annual tax levy and State appropriation, available for school purposes in that district."

The levying of school taxes is regulated by section 537, as amended, which provides:

"In all school districts of the . . third . . class, all school taxes shall be levied and assessed by the board of school directors therein, during the month of April or May each year, for the ensuing fiscal year; and in school districts of the second class shall not exceed twenty mills on the dollar, and in school districts of the third and fourth class shall not exceed twenty-five mills on the dollar, on the total amount of the assessed valuation of all property taxable for school purposes therein: Provided, that each school district of the second, third or fourth class may also collect a per capita tax on each resident or inhabitant of such district over twenty-one years of age, as herein provided."

Defendants' contention that "there can be no abuse of discretion in budgeting any amount unless an excessive amount is spent" may be disposed of with the observation that such conclusion would afford no relief to an overburdened taxpayer, faced with an abnormally high levy, which would produce more funds than were needed.

(a) The amounts which plaintiffs allege should be added as resources are (1) amount of taxes on real estate which a majority of the defendant directors undertook to abate or exonerate, viz., $3292.17; (2) the amount owed by

the tax collector, $3808.53, and (3) the amount in the treasury in excess of $35,000 (the sum set forth in the budget as being the balance on hand as of July 4, 1932), viz., $15,593.44.

1. The so-called abatements constituted an attempt on the part of the majority of the members of the school board to relieve the owners of real estate from liability for the payment of taxes assessed thereon. They lack legal authority to take such action.

2. The tax collector admitted owing the district $3808.53, and the amounts embraced in the first and second items should be added to the balance on hand.

3. The treasurer's report submitted on July 1st showed cash on hand amounting to $50,593.14, the fiscal year ending July 5th. At a meeting held on that date, bills amounting to $8942.44 were paid. After deducting the amount of these bills, the balance on hand at the end of the fiscal year was $41,664.20, in addition to the sum of $989 which represented the balance in the special pay-roll fund, making a total of $42,653.20. Thus the amount actually on hand in excess of the amount of $35,000 as set forth in the budget was $7653.20. While we are unable to conclude that a failure to estimate the exact amount on hand at the beginning of the fiscal year is an abuse of discretion, or arose from improper influences, a disregard of duty or a violation of the law, good judgment would dictate that the budget should now be reformed on the basis of the amount actually on hand.

(b) The items of the budget attacked are as follows: . (A-1) Secretary's salary, $2400; supply clerk for secretary's office, salary $2100; (A-7) treasurer's commission, $6200; (A-8) tax collector's commission, $6400; (A-14) superintendent of grounds and buildings, salary, $2400; (B-1) salaries of special teachers, $22,150; (B-8) salaries of principals and teachers, $298,950; (B-9) text books, $14,000; (B-10) supplies, $11,050; (C-1) libraries, salaries, $9000; (C-8) transportation of pupils, $15,000; (D-1) wages of janitors, matrons and maintenance crew, $48,870; (E-5) repairs and replacement of furniture, $4500; (C-2) payment to sinking fund, $99,536.36; (C-5) appeal from triennial assessment, $15,000.

(A-1) The budget designates for the secretary's salary the sum of $2400. In addition to the secretary, the other employes engaged in connection with the work that might properly come under the supervision of the secretary are district clerk, salary $2200; supply clerk, salary $2100, and a stenographer, at a salary of $1500. We cannot but conclude that in fixing the salary of the secretary at $2400 the board was influenced by other considerations than the public interest. The stenographer takes the minutes of the meetings of the board in shorthand and transcribes them. The work performed by the secretary is negligible. A salary of seventy-five dollars per month or $900 per year is ample and reasonable compensation for the duties performed by him; nor can we conceive that it is necessary that this school district, with only twelve school buildings, should employ a supply clerk at an annual salary of $2100 in addition to a district clerk at an annual salary of $2200. There is no real necessity for the supply clerk, and the position should be eliminated.

(A-7) Treasurer's commission. The treasurer's compensation fixed at $6200 is grossly excessive. A bank has been duly designated as depository of the school funds. The duties performed by the treasurer are to receive the funds of the school district and deposit same in the bank and sign checks. He keeps no books and his accounts are made up by the depository. The treasurer is steadily employed by Luzerne County as a grader, working on the public highways, receiving for such employment sixty-five cents per hour. A liberal com-

pensation for the services to be performed by him as treasurer would be $1200 annually or $100 per month, and this item should be reduced to that figure.

(A-8) Tax collector's commission. The tax collector's commission has been fixed at one per cent. of the amount of school taxes to be collected by him during the present year. The budget contains the figure of $6400. Ninety-four per cent. of the taxes payable to the school district will be paid by one taxpayer. The same collector, who is the treasurer of the township, is also collector of the county, poor and township taxes and his total compensation as collector of the various taxes on the basis of the commission fixed in the budget will amount to $34,154. The school, county and poor taxes will be entered upon the same duplicate and collected at the same time.

We do not think that in determining the reasonableness of this commission we should close our eyes to the fact that the collector is the collector of the other taxes in addition to the school taxes, nor do we think that the commission can be sustained on the theory that some years ago a commission of two per cent. was determined to be reasonable. The question is not one of percentage but the amount realized, and this in turn depends upon the amount of the duplicate. In some districts a commission of two per cent. might not only be reasonable but almost inadequate while in other districts it might be grossly excessive. The excessive and exorbitant compensation paid to tax collectors in certain municipalities is a blot on our system of government. To say that the annual compensation of a tax collector in a township should be almost twice the salary of the Governor, three times the salary of officials in the Governor's cabinet and $15,000 greater than the salary of the Chief Justice of our state Supreme Court, is to shock the judicial conscience. In view of the present economic condition, it would seem that the legislature should consider giving some relief from such conditions and place this office upon a salary basis. We can discover no justification for compensating this tax collector in approximately the sum of $35,000, and we do not believe that in fixing the compensation at double the rate established last year the majority of the members of the school board acted in good faith or exercised proper discretion. The compensation for collecting the school taxes should be reduced to $3750, the amount designated in the bill, and if this amount was not designated, we would be inclined to reduce it further.

(A-14) Superintendent of grounds and buildings. The budget contains a figure of $2400 as the salary of the superintendent of grounds and buildings. There are twelve buildings to be cleaned and looked after in this school district. The duties of the superintendent were not clearly defined. Assuming that he acts as a sort of head janitor or foreman over the other janitors, we can see no real necessity for the position and no justification for its continuance. The supervising principal of this district testified he was thoroughly familiar with the work to be performed by the janitors in the various school buildings, knew in detail the services rendered by them in connection with the cleaning and the keeping of said buildings in condition, and we think it clear that he can supervise the work done by the various janitors without having any undue burden placed upon him.

(B-1) Supervision of grades and subjects, salaries, and (B-8) salaries of principals and teachers will be discussed together. The testimony discloses that sixty-four per cent. of the teachers in this school district are paid in excess of the minimum requirements of the Edmunds Act, and that the amount paid in excess of such requirements amounts to $16\frac{3}{4}$ per cent. No attack has been made upon the qualifications of any of the teachers. In view of their conceded qualifications and experience and the service rendered the

district, we are of the opinion that we cannot substitute the judgment of the chancellor for that of the directors in fixing the salaries of these teachers. It would appear, however, that the number of teachers engaged is not necessary, and we think an economy might well be practiced by requiring the school principals, who do not teach, to teach at least a part of the time and thus reduce the number of teachers engaged. Good judgment would seem to indicate that the directors should consider whether the salaries, which are comparatively the highest salaries paid in any school district in this vicinity should, in view of the present economic condition, be reduced. We think that the amounts embraced in items B-1 and B-8 should be reduced in the sum of $10,000, and that by allowing the figure remaining after this reduction, a very liberal allowance will be afforded to the defendants' directors for the compensation of principals and teachers.

(B-9) Text books. The amount carried in the budget for this item is fixed at $14,000. The amount spent during the past year for text books was $11,000. The testimony discloses a rather meager inquiry into the question as to the requirements for books for the ensuing year. It is apparent that there has been little or no effort to practice economy. The actual book requirements of the district for the current year can be met by an expenditure of $10,000, and this item should be reduced to this figure.

(B-10) Supplies. The amount carried in the budget which the directors contemplate expending for footballs and football equipment for the high school football team is without authority of law and should be eliminated: Petition to Remove Blythe Township School Directors, 26 Schuyl. L. Rec. 249, 266. What has been said with reference to the book requirements applies also to the question of supplies. The total amount for supplies should be reduced from $11,050 to the sum of $7500.

(C-1) Libraries, salaries. The amount contained in the budget is intended to pay the salaries of six individuals engaged in the libraries of the school district. It is conceded that none of the six possess the requirements designated by the State Department of Education. The directors have designated them as "clerk librarians," and an effort is made to justify their appointment under section 305 of the School Code authorizing the employment of "clerks or employes" as the board may deem proper.

There is no testimony in the case that the defendant directors ever defined the duties of these alleged clerks as provided for in the above section. It is quite apparent that their employment is a subterfuge. They are not clerks, they perform no clerical work, but are engaged as librarians in the face of the fact that they are concededly disqualified.

We do not think that section 305 of the code justifies this procedure, but regard the employment of these individuals as unlawful, and conclude that the amount designated in the budget for their salaries should be eliminated. If the defendant directors, during the school term, employ librarians in the high school who are qualified for such positions, the expenditure, in the payment of such librarians, would be proper.

(C-8) Transportation of pupils. The testimony discloses that this district has been exceptionally liberal in furnishing transportation to pupils. High school pupils, living less than one mile from the school attended by them, have been furnished with free transportation. During the past year the district furnished the pupils with 336,464 tickets for transportation, 7000 of which have not been accounted for; that is to say, they have not been used nor returned to the school district. In some instances 190 tickets have been given to a student who could use only 180. We do not think that section 1404

of the code, which provides that "the board of school directors in any school district . . . may, out of the funds of the district, provide for the free transportation . . . to and from the public schools," contemplates that free transportation should be furnished to high school pupils living within a mile of the school attended. Good judgment would seem that the practice so prevalent in this district should be entirely discontinued. However, in the present case, we merely limit the amount to the sum designated in the bill, namely, $12,000, and the transportation item should be reduced to that figure.

(D-1) Wages of janitors, matrons and maintenance crew. The budget carries the sum of $48,870 for this item. We think it apparent that an excess number of employes have been engaged as janitors and maintenance men for purposes other than the best interests of the school district. Adequate janitor service for all the schools of the district may be procured for the sum of approximately $30,000, which is a liberal estimate. We can find no justification for engaging the maintenance crew at a compensation of $5400 per year. The explanation that these individuals will make repairs to the equipment does not explain, as the budget contains an item for the making of repairs and replacements. This item should be reduced to the sum of $30,000 and the maintenance crew should be eliminated.

(E-5) Repairs and replacements of furniture. Inasmuch as a contract for repairs to the furniture has been executed by the directors of this school district, the objection to this item is dismissed.

(C-2) Payment to sinking fund, $99,536.36. This is the total amount required to meet every bond issue of the school district regardless of the needs for the fiscal year. The various resolutions authorizing four of the eight bond issues provided:

"The moneys realized from said tax shall be by the treasurer of the said school district paid over when and as the same are collected to the Wyoming Valley Trust Company, in the City of Wilkes-Barre, Pa., and shall be by the said Wyoming Valley Trust Company applied to the payment of the interest and state tax upon said indebtedness as the same shall from time to time fall due, and the balance of said moneys shall remain with the Wyoming Valley Trust Company, applied to the principal of said bonds at maturity, nor shall the said moneys so collected be diverted or withdrawn from the said Wyoming Valley Trust Company by the said school district or any of its officers for the time being, but the same are irrevocably devoted and pledged to the payment of the said indebtedness, the interest and state tax thereon meanwhile. The said Wyoming Valley Trust Company is hereby constituted and appointed the fiscal agent of the said school district for the purposes aforesaid, in consideration of its allowing said school district interest at the rate of three per centum per annum upon all balances, which shall be added to the sinking fund and shall be applied if necessary, from time to time, for the payment of interest and state tax upon said bonds, and the principal thereof at maturity, and after all the said bonds have been paid off and the interest and state tax fully liquidated to the date of such payment, any moneys remaining to the credit of the school district with the said Wyoming Valley Trust Company, whether derived from the proceeds of such tax, or from the interest on balances, shall be paid over to the said school district."

The resolutions have no binding force as to the funds not credited in accordance with their provisions, but which were arbitrarily allocated by the bank. In the past, the sinking fund levy made by the officials of the defendant school district has been a levy of a lump millage which, in each instance, was allocated to the several issues by the bank. The amount thus allocated to

the 1924 bond issues is $26,127.25 in excess of the amount called for by the tax levy requirements. Obviously, a surplus of this character was never contemplated. The practice relative to the sinking fund appears from the following:

| Issues | 1931 Sinking Fund Schedules | 1931 Amounts Credited by Bank | 1931 Amounts Credited by Bank |
|---|---|---|---|
| 1912 | $7,340 | $3,500 | |
| 1914 | 7,340 | 4,050 | |
| 1915 | 5,050 | 3,375 | |
| 1916 | 2,010 | 730 | |
| 1921 | 35,122 | | $40,690.00 |
| 1922 | 16,158 | | 28,575.00 |
| 1924 | 36,475 | | 54,987.45 |

The accumulation of interest in the eight accounts amounts to $35,172.97. Plaintiffs contend that this interest should be applied to the several funds in accordance with the testimony of the representatives of the bank. By such application each sinking fund more nearly reaches its required condition. We think the testimony warrants the conclusion that the allocations were not correct and that the error may now be corrected and that the requirements of the sinking fund should be reduced from $99,536.36 to $38,236.14.

(C-5) Appeal from triennial assessment. The appeal referred to in connection with this item of the budget was improperly taken, in that appellants did not appear before the board for the revision of taxes and appeals but appealed directly to the court of common pleas. The appeal was taken more than thirty days after action by the board. It is defective and might, we think, have been stricken from the record on proper application, but no such application was made. The coal company whose property was assessed might prefer to have the case heard upon the merits. Under this condition we cannot conclude that defendant officials abused their discretion by designating the sum of $15,000 for prosecuting such appeal.

In arriving at the conclusions above expressed, we are not unmindful that the court should not perform the administrative duties which the law commits to the directors of a school district and that the judgment of the chancellor should not be substituted for that of public officials. However, it is equally clear that the public moneys are neither to be collected by taxation nor expended at the mere whim or caprice of those who have been selected to perform such important duties in the manner provided by law: Mason v. Wilkes-Barre Township, 68 Pa. Superior Ct. 486, 490.

In Mason v. Township of Hanover, 19 Luz. L. R. 239, Judge Fuller held that a township tax levy was, on injunction proceedings at the instance of a taxpayer, subject to revision where the appropriations were excessively made without proper detailed estimate of the expenses, or were extravagantly made. In the course of a well-considered opinion, that distinguished jurist, after calling attention to the fact that a large percentage of the taxes were paid by corporate taxpayers, well said:

"The disproportion thus existing in respect to taxability between ownership and government has created a situation in which the former strives to minimize, while the latter strives to maximize, the public expenditures, and the former, actuated by the economical instinct of people whose money is being expended, struggles desperately to keep the taxes below, while the latter actuated by the liberal instinct of people whose money is not being expended, struggles with equal desperation to put the taxes above a reasonable standard of

expenditure; a situation in which the principal taxpayers, for self-protection, take upon themselves, as the law permits, the responsibility and expenses of the public roads, and also seek frequent intervention by the courts against the generosity of the government in the township matters left under its control."

In designating the positions which we have indicated should be eliminated and in stipulating the various amounts which we have held should be reduced, the defendant directors authorizing such action were not moved by the best interests of the district. The testimony indicates that the estimates were arrived at without due consideration, and that the positions were created without any real necessity and apparently for political reasons.

Now, August 12, 1932, after hearing, the injunction heretofore granted is modified so as to read: The defendants, Peter Wolfe, Martin Lavin, Anthony Zuchosky, John Kuzmak, Harry Williams, David Thomas and Joseph Molitoris, members of the Board of School Directors for the School District of the Township of Hanover, and John Kuzmak, secretary of said board, are restrained from preparing and delivering to Joseph Fela, Treasurer of Hanover Township and an ex officio tax collector of Hanover Township School District, any duplicate for a greater tax than 10.3 mills on the valuation of $49,252,223 and upon the respective valuations of the taxpayers' property.

The defendant, Joseph Fela, is restrained from receiving any duplicate for a greater tax than 10.3 mills on the above designated valuation, and is further restrained from collecting from the taxpayers of the school district any greater tax than 10.3 mills on the last valuation of their property in said school district. As so modified, the injunction is continued until the further order of the court.

From Frank P. Slattery, Wilkes-Barre, Pa.