## Lamb *v.* Redding, Appellant.

*School law—School board—Abuse of discretion—Buildings—*
*Equity—Injunction.*

A board of school directors abuses its discretion when it plans,
in manifest disregard of public interests, to abandon a well lo-
cated school site on which a school building with good founda-
tions had been partially erected, to sell the site and the building
which cost together $70,000, for $10,000, and to purchase another
site and erect thereon another building at a combined cost of
$150,000. In such a case a court of equity has jurisdiction to
interfere by injunction for the protection of the public.

Argued Nov. 2, 1911. Appeal, No. 233, Oct. T., 1911,
by defendants, from decree of C. P. No. 2, Allegheny
Co., July Term, 1911, No. 29, awarding injunction in
case of William Lamb et al. v. D. L. Redding et al.,
School Board of the School District of McKees Rocks
Borough. Before FELL, C. J., BROWN, MESTREZAT,
POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Af-
firmed.

Bill in equity for an injunction. Before MILLER, J.,
specially presiding.

The facts are stated in the opinion of the Supreme
Court.

*Error assigned* was decree awarding injunction.

*R. S. Martin,* with him *Edward F. Duffy,* for appel-
lants.—In the exercise of sound discretion an honest
judgment reached after due consideration by a board
of school directors with reasonable ground on which to
base it, though wrong or mistaken, cannot be regarded
as abuse of discretion or from which fraud or bad faith
can be inferred: Roth v. Marshall, 158 Pa. 272; Com.
v. Wenner, 211 Pa. 637; Butz v. Romig, 17 Pa. D. R. 1;
Rittenhouse v. Creasy, 2 Kulp 241; Witherop v. Titus-

ville School Board, 7 Pa. C. C. R. 451; Wharton v. Cass Twp. School Directors, 42 Pa. 358 ; Cooney v. Gardner, 43 Pitts. Leg. J. 190; Gaston v. Meadville School, 5 Pa. D. R. 549.

*James Balph,* with him *R. A. Balph* and *Albert B. Schultz,* for appellees.—The court had jurisdiction: Kitchel v. Board of Commissioners, 123 Ind. 540 (24 N. E. Repr. 366) ; Crow v. Board of Commissioners, 118 Indiana 51 (20 N. E. Repr. 642) ; Sheidley v. Lynch, 95 Mo. 487 (8 S. W. Repr. 434).

OPINION BY MR. JUSTICE STEWART, January 2, 1912:

Appellants constitute the present school board of the school district of McKees Rocks in Allegheny county. Their immediate predecessors purchased at a cost of $17,500 a lot of ground on which to erect a new and additional school building. In preparing the ground for the proposed new building, laying the foundation, and erecting the superstructure to the height of the first floor, they expended of the public money the further sum of $52,000, making in all an expenditure of about $70,000. The building has remained in that unfinished condition. Appellants now propose to abandon the site so chosen and improved, purchase another at a cost of $27,000, and erect thereon a school building estimated to cost when completed $125,000. The appellees, tax payers of the district, filed their bill complaining of this proposed action and asking that the board be restrained from carrying out their purpose. In the answer filed appellants seek to justify their action by the following considerations: first, that it is doubtful whether the foundations constructed on the present site are sufficient to support the contemplated structure, second, that to complete the building on which work has been begun, would open the door for claims now pending, or which may be made, for work and material employed and furnished in and about the

uncompleted building, which in equity and good conscience ought not to be paid; and third, that it rests wholly in the discretion of the board to say whether the proposed change shall be made. The sixth finding of the learned chancellor who heard the case, relates to the first of these considerations, and is as follows: "From the weight of the evidence the fact is found, that the foundations of the May Avenue site, as reinforced with the walls thereon, and the superstructure as now existing, are entirely safe, and will admit with safety of the completion of the superstructure originally contemplated, or of any part thereof; or of adaptation to or modification thereof; it further appeared, not only from the weight of the evidence, but from personal examination of both places, that this particular site is commodious, elevated, quiet, one block distant from street car lines, with abundant opportunity for light and air. The further fact appears, that it is feasible to erect upon any one of the two wings of the present superstructure, a building in accordance with the original plans, or a modification thereof on new plans, containing eight rooms with all the necessary conveniences, at a cost of from $22,000 to $25,000, for each wing; and it would appear that these wings could be erected and completed ready for occupancy, the whole superstructure built up and roofed, even if not finished at present, on the basis of the original plans, or a modification thereof by independent plans, at a cost within the estimated cost of the new site and a completed building thereon." With respect to this finding we have only to say that an examination of the evidence shows that it is abundantly supported and admits of no qualification. The chancellor further finds that the utmost that could be realized on a sale of the present site with the unfinished building would be $10,000. With regard to the second consideration, the chancellor says, "It does not follow that the use of the present structure in whole or in part, enlarges the rights

of any of the so called claimants. Whatever rights they may have, existed when this work was stopped." This is too evident to call for discussion. With the two reasons specifically alleged thus disposed of, in a way meeting our entire approval, all that remains is the question of discretion. If it appeared that the proposed abandonment of the present site was demanded because of its inadequacy, or because of considerations affecting the public health, or because the adoption of a new site would result in advantages bearing some reasonable proportion to the expenditure required, or that there was reasonable ground for difference of opinion with respect to these matters, the court would be without jurisdiction to interfere with the determination of the board as to its line of action. That all the things here complained of, that is to say, the abandonment of the present site regardless of the amount expended thereon, and the selection and purchase of the one proposed, are within the power delegated to the school board, is not open to question; and presumably the determination of the board to do these things rests upon considerations of public welfare, and has been reached by the exercise of intelligent judgment in connection therewith. The burden of showing to the contrary, when the action of a school board is challenged with respect to matters committed to its discretion, is a heavy one; for the power of the courts in such cases is exceedingly limited, and they are permitted to interfere only where it is made apparent that it is not discretion that is being exercised but arbitrary will or caprice. Discretion involves the exercise of judgment incidental to the proper performance of the duty delegated. When the contention is that the proposed action is unwise, no matter by what consensus of opinion this is shown, the law will refer it to mistaken judgment over which it has no supervision. But if it cannot be so referred; if the facts admit of no other conclusion than that the determination of the board

has been influenced by other considerations than the
public interests, no matter what these may have been,
the law will regard it as an abuse of power, a disregard
of duty, and it becomes the duty of the courts to inter-
fere for the protection of the public. Not only does
the evidence in this case overcome the favorable pre-
sumption in support of the board's action, but it makes
it impossible to connect that action with the exercise
of judgment or proper regard for public welfare. Two
of the specific reasons the board assigns for the pro-
posed change are shown to be absolutely baseless, while
the third is little better than a substitution of arbi-
trary pleasure for the discretion which the law allows.
The learned chancellor, after a careful review of the
evidence, finds no room for difference of opinion with
respect to what the public interests require in the
premises, and reaches the following conclusion: "It is
evident as a result of this hearing that the best interests
of this district are seriously and injuriously affected by
the defendant's proposed action; almost all the public
money spent will have been absolutely.wasted. It is
clearly demonstrated from the overwhelming weight of
the evidence that whatever may have been the original
defect in the foundation of a part of this building, and
whatever may have been the extravagance or waste of
the former board, and those with whom it contracted,
including the apparent exorbitant cost paid for work
and material hitherto furnished and done upon this
structure, that it is now entirely safe and secure; to
abandon it in the light of these facts, which if the
board did not know before it certainly can ascertain
from this record has no semblance of justification. It.
is obvious that the accommodations now desired and
those for many years in the future can be secured by
proceeding upon either one or both of the wings of the
present building at a cost less than the purchase price
of the new site, so far as each wing is concerned. To
abandon a good site and a safe structure which has

cost the district in the neighborhood of $75,000, in actual cost and from which it could not realize $10,000, by a sale; to begin the erection of a new structure upon the proposed new site, with the uncertainties of foundations and the uncertain cost of an uncertain building, should not be sanctioned." In this conclusion we concur. We should sustain the school board in the present contention if the evidence left us at all in doubt, not as to the wisdom of their policy, for that is no concern of ours, but as to whether that policy was determined upon by public considerations alone. Unfortunately it does not, but is convincing that public interests have been subordinated if not wholly ignored. The appeal is dismissed and the decree is affirmed.