Regan et al., Appellants, *v.* Stoddard et al.

Argued March 25, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*James J. Regan, Jr.,* in propria persona, for appellants.

*C. Brewster Rhoads,* with him *Sidney L. Wickenhaver, Edward B. Soken, Reuben E. Cohen* and *Montgomery, McCracken, Walker & Rhoads,* for appellees.

PER CURIAM, April 11, 1949:

Certain taxpayers of the City and School District of Philadelphia filed a bill in equity against the Superintendent of Schools of Philadelphia and the Assistant Superintendents and Assistant District Superintendents and the members of the Board of Public Education of Philadelphia and certain principals of the various public schools of Philadelphia, praying for injunctions both restraining and mandatory, to change the courses of study, to change the methods of promoting pupils, and to exclude certain pupils from public schools unless special schools or classes are provided for them.

Preliminary Objections were filed by the defendants on the grounds that (1) the bill of complaint does not sufficiently aver any failure of the defendants to perform the duties imposed upon them by law, any act of the defendants which was not within their proper administrative discretion under the law, or the adoption of a policy motivated by any improper or unlawful pur-

pose; (2) that the bill of complaint contains impertinent, irrelevant and scandalous matter; and (3) that the bill of complaint does not aver invasion or threatened invasion of any legally or equitably protected interest of plaintiff taxpayers.

The bill of complaint challenges the administration of the schools of Philadelphia in the selection of the courses of study, the system of promotion and the retention of non-proficient pupils in regular classes. Annexed to the bill of complaint are Exhibit "A", "Statement on Policies Relating to Pupil Placement", published by the defendant Board of Superintendents February 20, 1947, and Exhibit "C", "Report of the Committee on Pupil Placement", which was approved by the defendant Board of Public Education on November 10, 1947. These two documents contain the policies adopted by the defendants in the administration of the public schools.

The plaintiffs seek the following relief in equity:

(a) A mandatory injunction against the Board of Superintendents and the members of the Board of Public Education commanding them to direct the defendant teachers to teach certain subjects and to furnish the defendant teachers with report cards on which the teachers may grade pupils according to their relative percentages of proficiency, and indicate whether pupils are entitled to be promoted.

(b) Mandatory injunctions against the defendant teachers commanding them to teach certain subjects and to subject the pupils to written examinations to determine their percentages of proficiency and eligibility for promotion.

(c) Injunctions against the Board of Superintendents, the School District of Philadelphia, the Board of Public Education, the principals and teachers, restraining them from promoting pupils except on the basis of proficiency as determined by examinations, from including in the school curricula subjects other than the sub-

jects set forth in the bill, and from making easier the content of any course except by segregation of deficient pupils in special classes or in special schools.

Peliminary objections were filed to the bill of complaint setting forth, inter alia, "The Board of Public Education is directed by statute to define the general policies of the school system and to legislate upon all matters pertaining thereto, to determine and direct all expenditures for the maintenance and improvement of the school system, and in general to legislate upon all matters concerning the conduct of the schools subject to the provisions of the school code (Act of May 18, 1911, P. L. 309, section 2222)."

"The School Code states that the Board of Public Education with the advice, assistance and approval of its Superintendent of Schools, shall arrange courses of study adapted to the age, development and needs of the pupils (Act of May 18, 1911, P. L. 309, Section 1608).

"The averments of the Bill of Complaint fail to show that the Board of Public Education has committed any act which is not within the sphere of its powers, or which has been the result of fraud or collusion, or which does not involve the proper and legal exercise of the administrative discretion delegated to the Board of Public Education; or any act which can be subject of injunctive relief.

"The Board of Public Education and the other defendants may be restrained by injunction when they are acting without authority and in breach of the public trust committed to them. The averments of the Bill of Complaint fail to show that the defendants, or any of them, have established educational policies and conducted the public schools of Philadelphia for any purpose other than for the best interests of the pupils, nor does the Bill of Complaint show that the Board of Public Education, or any of the other defendants, have

ever been influenced by any consideration other than the best interest of the public."

The court below sustained the preliminary objections and dismissed the Bill of Complaint without leave to amend. In so doing the Court quoted the following from *Wilson v. School District of Philadelphia,* 328 Pa. 225, 195 A. 90, as follows: "The courts are in no position to exercise control over schools and determine the policy of school administration; the judges ordinarily are not equipped for this immense task. The divergent views of the modern educational trends, the different systems advanced for the education of children, the number of students that should be placed in each class so that the advantages of individual attention and instruction might be had, the different grades of instruction based upon mental aptitudes of students,—all these present serious questions which the school board alone can determine, and the employment of an indefinite number of additional instructors would be in their keeping. One factor alone, that of vocational training, with all the expensive equipment accompanying it, necessitates a large number of teachers. All this, being purely administrative, must be left to persons of experience who have made a life study of it, and certainly is not to be subjected to the consideration of jurists who have little or no training to appraise school systems or their necessities. It need not be stated that the salaries of teachers and staff members should be adequately provided for, and this comprises one of the most expensive items of maintenance. . . . It was emphasized in Hibbs v. Arensberg, 276 Pa. 24, that the exercise of discretion by the school authorities will be interfered with only when there is a clear abuse of it, and the burden of showing such an abuse is a heavy one. In those few instances where the court has interfered with the administrative power of school boards, the interference was based on the school boards' manifestly illegal action in violating the express words of statutes defining their powers or on

facts clearly indicating bad faith and violation of their public duty. See Bender v. School Directors, 182 Pa. 251; Lamb v. Redding, 234 Pa. 481; Zimmerman v. Miller, 237 Pa. 616; Gemmell v. Fox, 241 Pa. 146; Hibbs v. Arensberg, supra. But this court has definitely stated that it will not question the policies of school authorities so long as the board is acting within the scope of its statutory authority and in good faith: Lamb v. Redding, supra, at p. 486."

The court below then pertinently said: "We must reiterate that a court is not a super Board of directors with superior knowledge of the administration of business, finance, or the science of pedagogics. It would be presumptuous to superimpose judicial control upon the exercise of discretion by trained educators. The legislature has vested wide powers in the Board of school directors under the Act of May 18, 1911, P. L. 309, sec. 1608, 24 PS 1552; sec. 2222, 24 PS 1992; sec. 1414, 24 PS 1421, with respect to the very matters which are now in issue. Our appellate courts repeatedly have affirmed their exercise of this discretion. Day v. Amwell Township School District, 283 Pa. 248; Hibbs v. Arensberg, 276 Pa. 24; Lamb v. Redding, 234 Pa. 481. In the latter case, judicial interference was confined to those cases where it was 'apparent that it is not discretion that is being exercised but arbitrary will or caprice.' Finally, it is our opinion that as a taxpayers' Bill, the plaintiffs have neglected fatally to allege an actual or threatened pecuniary loss. There are conclusions of waste, but no allegations of fact in support thereof. We cannot comprehend how the plaintiffs will suffer pecuniary loss based upon the continuation of an educational policy or philosophy with which they are not in agreement. The Bill discloses no wrongful expenditure of money or wasting of assets: Schlanger v. West Berwick Borough, 261 Pa. 605, 608, and the mere fact that there is not universal agreement upon a controversial subject

such as education does not give to every taxpayer the right to maintain a Bill to force the adoption of his policies and philosophies."

Nothing need be added to what was well said by the court below.

The decree is affirmed. Costs to be paid by the appellants.