Allen, et al. *v.* Uniontown Area School District.

Argued October 21, 1971, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS.

*David E. Cohen,* with him *Herbert Margolis,* for appellant.

*Henry R. Beeson,* for appellees.

OPINION BY JUDGE KRAMER, December 28, 1971:

The instant case comes before this Court upon appeal from an "Adjudication and Final Decree" (dated July 2, 1971) of the Court of Common Pleas of Fayette County, under which the Uniontown Area School District was "permanently enjoined from further proceeding with its present plan for the construction of a new Senior High School . . ." at a site known as "Continental," which lay outside the boundaries of the school district. The case began when Arthur Allen et al. (appellees) residents of the City of Uniontown, filed, on November 20, 1970, a complaint in equity praying that the Uniontown Area School District (appellant) be so permanently enjoined. In their complaint the appellees alleged that the board of the appellant had acted arbitrarily and capriciously in their considerations, investigations and deliberations relating to the construction plans of the senior high school buildings to be located at "Continental."

In the interest of obtaining a final determination of this case as soon as possible, the parties stipulated and the lower court agreed to the submission of the notes of testimony, briefs and legal arguments directly to the court en banc for its opinion and final decree. This approach was utilized so that any subsequent appeal could be filed immediately before this Court. The Court of Common Pleas devoted nine days to the taking of testimony which yielded close to one thousand pages of testimony and an additional three hundred pages of exhibits. On July 12, 1971, appellant filed its appeal before this Court. The Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673, No. 223, Article IV, Section 402(4), 17 P.S. 211.402(4) vests appellate jurisdiction in this Court to hear the instant appeal.

In order to properly deal with this appeal we are compelled to first determine the judicial function vested in the courts of common pleas in such actions for injunctive relief. On this aspect, our Supreme Court has spoken in the case of *Landerman v. Churchill Area School District*, 414 Pa. 530, 534, 200 A. 2d 867 (1964) :

"In order for a court of equity to grant relief, it must clearly be shown that the school board acted outside the scope of its statutory authority or not in good faith. It is only where the board transcends the limits of its legal discretion that it is amenable to the injunctive processes of a court of equity: Detweiler v. Hatfield Borough School District, 376 Pa. 555, 566, 104 A. 2d 110; Regan et al. v. Stoddard et al., 361 Pa. 469, 474, 65 A. 2d 240. Spann v. Joint Boards of School Directors, 381 Pa. 338, 349, 113 A. 2d 281, 287 (1955).

"The burden of showing such a clear abuse of discretion is a heavy one. Regan v. Stoddard, 361 Pa. 469, 65 A. 2d 240 (1949); Hibbs v. Arensberg, 276 Pa. 24, 119 Atl. 727 (1923) . . . A careful reading of the complaint as a whole discloses nothing more than that

plaintiffs, with some support for their position, disagree with the judgment and decision of the school board."

In reviewing the "adjudication" and final decree of the court below, we have had two questions raised by the appellant on appeal, viz., did the court below err (1) in finding that the board of the appellant abused its discretion in approving plans to build a new high school at Continental and (2) in concluding that the 5 to 4 vote of the board of the appellant approving the plans was void by reason of a finding that there was a conflict of interest by one of the majority voting members of the board.

The Public School Code, Act of March 10, 1949, P. L. 30, Article V, Section 502, as amended, 24 P.S. 5-502, states the power of a school board to establish schools:

"In addition to the elementary public schools, the board of school directors in any school district may establish, equip, furnish, and maintain the following additional schools or departments for the education and recreation of persons residing in said district, and for the proper operation of its schools, namely:—

"High schools. . . ."

Having set forth the statutory authority under which the school board operates and the respective judicial functions of the lower and appellate courts, we must now search to arrive at a viable definition of this "discretion" of which the school board is a repository. Our Supreme Court has spoken on this matter a number of times since the turn of the century, and we will endeavor to cite those cases felt to be most appropriate. In the case of *Lamb v. Redding*, 234 Pa. 481, 484-5, 83 A. 362 (1912) the Court stated: "The burden of showing to the contrary, when the action of a school board is challenged with respect to matters committed to its discretion, is a heavy one; for the power of the courts in such cases is exceedingly limited; and *they are per-*

*mitted to interfere only where it is made apparent that it is not discretion that is being exercised but arbitrary will or caprice.* Discretion involves the exercise of judgment incidental to the proper performance of the duty delegated when the contention is that the proposed action is unwise, no matter by what consensus of opinion this is shown, the law will refer it to mistaken judgment over which it has no supervision. But it cannot be so referred; if the facts admit of no other conclusion than that the determination of the board has been influenced by other considerations than the public interests, no matter what these may have been, *the law will regard it as an abuse of power,* a disregard of duty, and it becomes the duty of the court to interfere for the protection of the public." (Emphasis added.)

At 486 the Court continued: *"We should sustain the school board in the present contention if the evidence left us at all in doubt, not as to the wisdom of their policy, for that is no concern of ours, but as to whether that policy was determined upon by public considerations alone. Unfortunately it does not, but is convincing that public interests have been subordinated if not wholly ignored."* (Emphasis added.) In essence this approach continues in application by our courts to the present day. The Supreme Court in *Hibbs et al. v. Arensberg et al.,* 276 Pa. 24, 26, 119 A. 727 (1923), contributes further to our arriving upon a workable definition of "discretion." "Executive officers of municipal and school districts have many discretionary powers in performing their functions; *ordinarily courts will not interfere with this exercise;* but if it appears their action is based on a *misconception of law, ignorance through lack of inquiry into facts necessary to form intelligent judgment, or the result of arbitrary will or caprice, courts will intervene to prevent an abuse of power adverse to the public welfare.* Executive officers are clothed with the responsibility of originating and

executing plans for the public good; the presumption is that their acts are on such considerations and their decisions reached in a legal way after investigation. *When their acts are challenged, the burden of showing to the contrary rests on those asserting it, and it is a heavy burden.* Courts can and will interfere only when it is made *apparent* this discretion has been abused. *Abuse of discretion does not, as a rule, come from unwise acts or mistaken judgment,* but generally springs from improper influences, a disregard of duty, or a violation of law." (Emphasis added.) In the cases of *Regan et al. v. Stoddard et al.,* 361 Pa. 469, 65 A. 2d 240 (1949) and *Weber v. Philadelphia,* 437 Pa. 179, 262 A. 2d 297 (1970), the Court cited with approval those cases upon which we rely for our analysis of the exercise of discretion by a school board.

We have painstakingly read and reread the voluminous record in this case and we have failed to discover and confirm the presence of conduct "so arbitrary to amount to an abuse of discretion" as alleged by appellees and as found by the court below. Each and every instance set forth by appellees as an example of appellant's abuse of discretion appears to us to be no more than a difference of opinion. Indeed, a school board is required to investigate, to inquire, to study, to ponder and to finally decide the question, i.e., to exercise its lawfully mandated discretion. This process leading up to the actual exercise of discretion cannot be unending. To demand such an unending process is in itself an arbitrary and capricious and wholly unreasonable expectation. There must be a time after which a school board is entitled to arrive at a decision and thereafter enter into an executory stage, without being stymied at every turn by the differences of opinions of others. The instant appellees have in no way carried the very onerous burdens placed upon them by our case law. In *Hyam v. Upper Montgomery Joint Authority,* 399 Pa.

446, 455, 160 A. 2d 539 (1960), the Court said: "The legislature has vested in both the authority and the borough officials the power and responsibility of conducting governmental affairs in their respective areas: to such officials on the local level is given the right to exercise both judgment and discretion within the sphere of the legislative grant. Courts should be loath to interfere with or control the performance of the duties of such municipal officials; fraud, official misconduct, arbitrary and capricious abuse of power or discretion by municipal officials alone justify judicial intervention."

In *Neizer v. Schuylkill Township School District et al.*, 384 Pa. 323, 121 A. 2d 93 (1956), our present Chief Justice, speaking for a unanimous court, approved an opinion of the Court of Common Pleas of Chester County which reads, in part, as follows: "The board of school directors is the authority vested with the duty of saying what facilities are adequate and proper for the needs of the school district. *What are adequate and proper facilities is a matter of opinion about which reasonable people may differ. Because these plaintiffs are of the opinion that the defendants built too large or too elaborate a structure is no reason for holding that they are guilty of bad faith.*" (Emphasis added.)

The references to "Taj Mahal," "frills," "ill-advised," "unrealistic," etc., by the court below, while emotionally appealing grandiloquence, is hardly sufficient to support a legal basis for enjoining the appellant from proceeding with its present plan to construct a new high school. This is especially true in light of the uncontradicted evidence that whether the appellant builds a new school at "Continental" or expands the old school at Uniontown, the ultimate cost under the master plan for all schools in the district will be reasonably comparable. This fact when viewed from the lower court's finding that "there is a need for additional facilities to

further the education of high school students in the area" leads us to conclude that the "plan" of the appellant was well within the bounds of the exercise of their discretion granted and intended by the legislature.

We are of the opinion that our earlier analysis and discussion is dispositive of the appropriateness of the planning and taxation aspects of the present appeal.

Based upon the above analysis we hold that there is not sufficient or substantial evidence in the record upon which the court below could conclude that the appellant "acted arbitrarily and capriciously" in approving the "plan" to construct a new high school at Continental and therefore we must reverse.

The second question presented on appeal is not deserving of more than several lines. Appellees argue that one member of the appellant school board was subject to a "disqualifying personal or private interest in that he is an employee of the public utility which will supply all light and heat to the proposed structure under the plans approved." In answer to this point we call attention to an opinion of this Court in *Marino v. Zoning Board of Harrison Township*, 1 Pa. Commonwealth Ct. 116, 125, 274 A. 2d 221 (1971) wherein we discussed the burdens involved in supporting allegations of conflicts of interest as affects individuals acting in official capacities. Not one scintilla of evidence in attempting to satisfy such a burden has been presented by appellees. We must therefore reverse the court below on this point.

In summary, then, the court below is reversed, the Decree vacated, and the Complaint dismissed.