## Dochenetz, et al. *v.* Bentworth School District, et al.

Argued June 7, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Stephen I. Richman,* with him *Greenlee, Richman, Derrico & Posa,* for plaintiffs.

*Thomas J. Terputac,* with him *John F. Bell,* for defendant, School District of Bentworth.

*F. Lee Shipman,* with him *James Clippinger,* for defendant, Pennsylvania State Public School Building Authority.

OPINION BY JUDGE KRAMER, July 28, 1972:

This case comes within the original jurisdiction of this Court. It is an equity action brought by certain citizens seeking to enjoin their School District from building a new high school.

It comes before this Court as a result of our March 3, 1972 Memorandum Opinion and Order in which we accepted the transfer of this case from the Court of

Common Pleas of Washington County. A chronological resume of the numerous and intricate facts and procedural steps herein involved is indispensable to an intelligent understanding and appreciation of the issue.

On November 11, 1966, the defendant school district authorized the preparation of a broad educational survey, which was disclosed publicly and published in local newspapers in June, 1967. On February 3, 1968, the defendant school district authorized the preparation of a Long Range Plan, which was required by the Department of Education (Department) for any school building construction. This plan was made likewise a matter of public record. Both reports recommended the building of a new high school. Architects were retained, and preliminary renderings and specifications were made. Generally, the plans called for a new four-year high school building complex for about 700 students, living in the five municipalities comprising the school district in Washington County. Applications were made to the Department and later to the State Public School Building Authority (Authority) for approval of the project, and after several revisions to the proposal it was approved by both agencies. The land was transferred by deed from the defendant school district to the Authority, and thereafter on January 27, 1970, they entered into a standard agreement and lease, providing for the construction, financing and leasing of the new school. On August 10, 1971, the Authority, after competitive bidding, awarded the construction contract to the lowest responsible bidder, in the amount of $3,242,793. The total amount authorized to be financed was $4,075,-268.80.[1]

---

[1] As a result of an adjustment made to correct an error made by the Department in computing the "Room Schedule", revisions were made by the Authority, as late as April 11, 1972, resulting in an estimated net "local" (school district) share of the rental of $232,132.93 out of a total rental of $355,496.46.

On August 13, 1971, the four plaintiffs filed in their own behalf and on behalf of the residents, citizens, property owners and taxpayers of the School District of Bentworth, a *Complaint For Injunction* against the School District of Bentworth (defendant). In their Complaint, plaintiffs alleged, *inter alia,* that defendant's school directors "have abused their powers, have disregarded their duty, have acted arbitrarily and capriciously, and have acted unlawfully and against the public interest. . . ." The Complaint refers to a decision of defendant's directors to construct a new senior high school to serve students of the defendant school district. The Complaint, *inter alia,* prayed for the issuance of a preliminary or special injunction "enjoining the defendant school board from commencing or proceeding with the construction of the proposed new Bentworth Senior High School."

The defendant served upon the plaintiffs on August 20, 1971,[2] Preliminary Objections to the filing of the Complaint For Injunction, alleging, *inter alia,* that "[t]he plaintiffs have failed to join an indispensable party to this proceeding, or in the alternative, the suit should have been brought exclusively against the State Public School Building Authority. . . ." On that same day, a stipulation was entered into by the parties permitting the plaintiffs "to amend their Complaint to join the State Public School Building Authority (Authority) as a party-defendant."

An Answer to the Complaint For Injunction as well as New Matter were filed by the defendant school district on August 27, 1971, and on that same day, it filed a "Petition To Dismiss Complaint Or In the Alternative To Require the Filing of A Bond." An Answer to the above Petition was served by the plaintiffs on September 2, 1971, and was filed October 27, 1971. The

---

[2] These Preliminary Objections were filed on August 27, 1971.

Authority filed, on August 30, 1971,[3] Preliminary Objections wherein it questioned the jurisdiction of the Court of Common Pleas of Washington County to proceed with a case against the Authority.

On September 2, 7, 17 and 22, hearings upon the merits were held by the lower court, during which times only the plaintiffs and the school district defendant were present. The Authority was not present and was not represented at the above four days of hearings. It is to be noted that the Preliminary Objections of the Authority were not ruled upon at any time prior to or during the course of the hearings.

The contractor, William Garlick and Sons, Inc., of Fayette County, the lowest responsible bidder and awardee of the construction contract for the new high school, began excavation and site preparation work on September 27, 1971. The following day, the plaintiffs filed a "Petition For Leave To Amend Complaint Because of Occurrence of New Developments," asking the court to *immediately* enjoin the defendant school district and defendant Authority from any further acts related to the construction of the new senior high school. On September 28, 1971, the Court of Common Pleas ordered that an emergency conference be convened the following day for the purpose of dealing with the plaintiffs' prayer for immediate injunctive relief. At the conference it was agreed informally between the parties that the status quo would be maintained until October 4th, at which time further consideration and discussion would be held. The October 4th conference yielded no answers.

On October 18, 1971, the Court of Common Pleas of Washington County ordered, *inter alia*, that "[T]he

---

[3] This pleading was not brought to the attention of the Common Pleas Court until September 27, 1971, "by reason of failure of transmission within the courthouse."

case is transferred immediately by this action to the Commonwealth Court," thereby sustaining the August 30, 1971, Preliminary Objections of the defendant Authority. In an Order, dated November 8, 1971, this Court ordered that three issues be argued before it at argument in January 1972. The issues related to the indispensability of the Authority before the lower court, the ouster of the jurisdiction of the lower court and the question of waiver by stipulation of parties to the jurisdiction of the lower court.

During the latter part of September or early part of October, 1971, picketing of the construction site occurred for the purpose of preventing the on-going construction work. The lower court held hearings; however, it issued no injunction. On October 22, 1971, *the contractor* filed an action in equity praying for injunctive relief from the interference of those picketing. The lower court enjoined *both* the contractor and the pickets pending the disposition of the case before the Commonwealth Court. No bond was required. Appeal was taken to the Pennsylvania Supreme Court on November 23, 1971. *William Garlick & Sons, Inc. v. Elizabeth Lambert, et al.,* No. 33 March Term, 1972. The Supreme Court filed its opinion on February 2, 1972, at 446 Pa. 323, 287 A. 2d 143, in which it vacated the decree of the Court of Common Pleas for procedural and jurisdictional reasons.

By virtue of an Order of this Court, dated March 3, 1972, the Authority was held to be an indispensable party to the action, and the transfer from the lower court to this Court was deemed proper. Section 401(a) (1), (6), Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. (Act No. 223), 17 P.S. § 211.401(a) (1), (6), Rule 117, Pa. R.C.P. 213(f). This Court further held that plaintiffs' prayer for a preliminary injunction was not properly then before this Court and would not be considered. On March 8, 1972, plaintiffs,

based upon information received that construction was about to begin, filed in this Court a "Petition For Preliminary Injunction and For Hearing."

The defendant school district filed two pleadings before this Court on March 16, 1972, (1) a "Petition To Dismiss Complaint and Petition of Plaintiffs Or In the Alternative, To Require the Filing of A Bond," and (2) an "Answer and New Matter To Petition For Preliminary Injunction and For Hearing."

The record before us is the one made before the lower court, supplemented by depositions of witnesses taken on April 19, and May 4, 1972. A brief hearing was held before Judge Rogers of this Court on May 17, 1972, at which time this Court was informed that the record was complete and that the case was ready for final disposition. The case was argued before our Court on June 7, 1972. The parties filed requests for findings of fact and conclusions of law, together with legal briefs. At the May 17, 1972, hearing before Judge Rogers, it was represented by counsel for the Authority that the only legal issue before this Court was one of alleged abuse of discretion by the defendants. This representation was not disputed by the plaintiffs or defendent school district.

We must note that although there is no effective special or preliminary injunction, these very complicated proceedings have stopped all construction. No bond was ever required of the plaintiffs. All parties have expressed a desire for an expeditious disposition. It is obvious that the matter requires immediate attention because of construction contracts, leases and bond issues; and therefore we have advanced the case as quickly as possible.

## FINDINGS OF FACT

1. The School District of Bentworth (school district) is composed of the Boroughs of Bentleyville,

Cokeburg and Ellsworth and the Townships of North Bethlehem and Somerset, all located within Washington County.

2. The plaintiffs are residents and taxpayers of the School District of Bentworth, Washington County.

3. The population of the school district, as of 1970, was 8,856. Its assessed valuation of real property for 1970-71 was approximately $11,400,000, and market value was approximately $34,000,000. The present school district tax rate is set at 55 mills on assessed value. The earned income of the citizens of the school district is approximately $20,500,000 per year.

4. The school district *presently* operates five elementary facilities, the Bentleyville, Cokeburg, Ellsworth, Scenery Hill and Somerset Elementary Schools.

5. No new school buildings have been built in the school district since 1938. One elementary school building was renovated in 1955, and the other elementary school buildings are in a very poor physical condition.

6. The school district presently operates one high school facility, the Ellsworth Senior High School for grades 10, 11 and 12. The actual enrollment for grades 9 through 12 were as follows:

1968-69—659
1969-70—644
1971-72—654

7. On November 11, 1966, the school district commissioned the preparation of an educational survey by Dr. Richard W. DeRemer (DeRemer Report) to cover the areas of curriculum, facilities, organization, staffing and school planning.

8. The DeRemer Report was submitted to the school district in June, 1967, and, *inter alia*, recommended the abandonment of four of the elementary facilities (retaining Somerset Elementary School) and the construction of new facilities for secondary educational purposes for grades 9 through 12.

9. In February of 1968 the school district contracted with the Associated Educational Consultants, Inc., of Pittsburgh for the preparation of a Long Range Plan. Said plan concurred in the opinion that a new high school facility was needed.

10. The school district determined to construct a new high school, to convert the present high school at Ellsworth to an elementary school use, to retain the Somerset and Ellsworth Elementary Schools for elementary school use and to close the Bentleyville, Cokeburg and Scenery Hill Elementary Schools.

11. In September, 1968, the school district retained the architectural firm of J. C. Fulton and Associates (Architect) for the purpose of designing the new school facility.

12. The school district made application in January, 1969, to the Department of Education for the construction of a new secondary school facility.

13. In April, 1969, a survey team was appointed by the Department of Education for the purpose of reviewing said application, and in May, 1969, it found the project to be justified.

14. In July, 1969, a meeting was held with the Director of School Construction of the Department of Education, and shortly thereafter the first of several "room schedules" was presented. A "room schedule" and "reimbursable capacity" play critical roles in the computation of reimbursement by the Commonwealth to local school districts. The "room schedules" and the "reimbursable capacity" of the new facility were subject to three revisions following their initial presentation. Such revisions occurred in February and October, 1970, and in April, 1972.

15. The school district determined to finance the construction of the new facility through the Pennsylvania State Public School Building Authority (Authority), and transferred the land to the Authority.

16. In January, 1970, the school district entered into an agreement and lease with the Authority, calling for the financing and construction of the facility by the Authority and the subsequent leasing thereof to the school district.

17. The Authority was empowered by the school district in August, 1971, to award construction contracts to the lowest responsible bidders. The contract was awarded August 10, 1971, to William Garlick and Sons, Inc. The construction contract provides for a consideration of $3,242,793.00. The additional costs of financing brings the total estimation cost to $4,075,-268.80. The revisions made by the Authority on April 17, 1972, will change these figures, but not substantially.

18. The third revision (April 17, 1972), of the room schedule projects an enrollment to 685 students and a reimbursable capacity of 785 students.

19. The above adjustment in the room schedule requires an estimated yearly rental payment by the school district of $232,132.93 of a total rental figure of $355,-496.46. (The difference to be paid by the Commonwealth.)

20. As of April 30, 1972, the sum of $170,779.46 has been paid by the school district from project funds.

21. The record discloses that the school district directors obtained sufficient facts and guidance upon which it could exercise its judgment and discretion on whether to proceed with the construction of a new high school.

22. The determination by the defendant school district's directors to proceed with the construction of a new four-year senior high school in the manner followed, under the facts as disclosed by the record in this case, was within its statutory power and authority.

## Discussion

The issue before this Court is very similar to the issue considered by us in the case of *Allen, et al. v. Uniontown Area School District,* 4 Pa. Commonwealth Ct. 183, 285 A. 2d 543 (1971). The important distinguishing factor is that we sit now as a court of original jurisdiction, charged with the duty of fact finder, while in the *Allen, et al.* case we sat in exercise of our appellate jurisdiction. The *Allen* case sets forth the present status of the law in this Commonwealth as it relates to the area of the discretion of school districts and their directors. Rather than repeat all that we said in the *Allen* opinion, we simply refer to it, and stand upon our discussion of the scope of judicial determination (*see Landerman v. Churchill Area School District,* 414 Pa. 530, 200 A. 2d 867 (1967)) and the heavy burden placed upon those who allege an abuse of discretion on the part of the school district. (*See Lamb v. Redding,* 234 Pa. 481, 83 A. 362 (1912), *Hibbs, et al. v. Arensberg, et al.,* 276 Pa. 24, 119 A. 727 (1923), *Regan v. Stoddard,* 361 Pa. 469, 65 A. 2d 240 (1949), and *Neizer v. Schuylkill Township School District, et al.,* 384 Pa. 323, 121 A. 2d 93 (1956)). All of these cases hold that courts of equity will not interfere with discretionary acts of school boards when they are acting in good faith within the scope of their statutory authority.

The exigencies of this case, however, require that we elucidate upon a point or two made in the *Allen* case. In that case we stated: "Indeed, a school board is required to investigate, to inquire, to study, to ponder and to finally decide the question, i.e., to exercise its lawfully mandated discretion." 4 Pa. Commonwealth Ct. at 188, 285 A. 2d at 546. A school board, most often constituted of public-spirited and civic-minded laymen, are individuals holding public office, either by appoint-

ment or election. In the case of the School District of Bentworth, its school board members are elected by the taxpayers. The board is vested with far-reaching discretion as effects the education of the young. Included in these discretionary powers is the power to establish high schools. Act of March 10, 1949, P. L. 30, Art. V, Section 502, as amended, 24 P.S. 5-502.

In order for an individual or a group to induce the courts to interfere with the exercise of such discretion, a heavy burden must be borne. This burden is not properly borne by the act of proving that some alternative avenues of action might be better, or that a proposed plan of the plaintiffs was not considered. This burden is not properly borne by the act of proving that taxes will rise. It is not properly borne by the act of proving that the plan is lacking in wisdom, or business sense, or common sense, or any combination of all three.

To comprehend the burden of proof placed upon plaintiffs is to discern the difference between a lack of good judgment and wrongdoing. The former we are powerless to change, the latter must be proven before we can interpose to change that which has been done. The plaintiffs have certainly presented credible evidence, which leads one to question a number of the decisions of the directors. The record does not disclose that the directors acted out of caprice. Nor did they exercise their will arbitrarily. They did not misconceive the law; and above all, their actions *did not* result from a failure to inquire into facts necessary to form an intelligent judgment. Perhaps a more intelligent plan could have been formulated. The present plan nevertheless cannot be termed to be "unintelligent." The merits and demerits of the respective plans of the plaintiffs and the school district could be debated probably for months without either side being completely convinced. In the meanwhile the children in the four deplorable elementary school buildings suffer the exist-

ing dangers and are deprived of *their* rights. The record clearly shows that even if the proposed new high school is not built, this school district will be forced, almost immediately, to replace or alter four elementary school buildings, and construct some sort of addition (as limited by the topography of the land) to the existing high school. Even plaintiffs' witnesses acknowledge these facts. Apparently any constructive education building plan will cost a considerable sum of money. These facts negate the alarm of the plaintiffs over the additional tax burden to be placed upon them and the other taxpayers of the school district. As unpleasant as tax increases are to all taxpayers, the fact remains that taxes are a part of the price we Americans pay to live in a country where all of our children are entitled to an equal opportunity to receive a quality education.

This area of the law is one of narrowly drawn lines and subtitles. Courts must be wary on encroaching upon the legislative prerogative. Only in those instances wherein arbitrariness, caprice and wrongdoing characterizes a board's act, will a court interfere. Short of that point is the line wherefrom "discretion" extends. Arbitrariness and caprice must not be confused with bona fide differences of opinion and judgment. The former are indices of motivation and intention, while the latter, by definition, concede proper motivation and intention and differ only as concerns methods and modes of achievement and realization. In the instant case we are presented with differences of opinion as to methods and modes of achievement. We have not been presented with evidence of improper motivation and intention.

The defendants also have raised the issue of laches, contending that the plaintiffs waited some three or four years from the first public announcements of a proposed building program until the construction contract was awarded before they voiced opposition. Although

we need not rule on the laches issues, because the Complaint will be dismissed on other grounds, we note that in an equity action we are bound to the principle of balancing the rights and duties of the parties. It may be true as stated by the Common Pleas Court that the plaintiffs had no specific grounds to such an injunction against the building of a school until the school district and the Authority were legally committed to the project; however, the record discloses that *no one* formally questioned the project until this law suit was filed. The school district director witness expressed his surprise on the filing of this law suit by the plaintiffs. His expression went unchallenged on cross-examination or anywhere in the record. Why the plaintiffs did not present their views and concerns at the regular public meetings of the directors of the school district, or write to the Department or Authority, or file their suit when the school district purchased the land, or even later when it transferred the land to the Authority (which latter two events occurred before the construction contract was awarded) are mysteries unanswered in the record. In any event, we need not and do not rule on the question of laches.

CONCLUSIONS OF LAW

1. This Court has jurisdiction to determine the matter.

2. The School District of Bentworth and the State Public School Building Authority did not commit abuses of discretion as was alleged by the plaintiffs.

3. Based upon the record presented in this case, we conclude that there are no legal grounds upon which to base a grant of the injunctive relief prayed for by the plaintiffs. We therefore,

ORDER

AND Now, this 28th day of July, 1972, based upon the above findings of fact and conclusions of law, the Complaint For Injunction as filed by plaintiffs is hereby dismissed.