Mid Valley Taxpayers Association et al., Appellants *v.* Mid Valley School District et al., Appellees.

Argued April 10, 1980, before Judges Wilkinson, Jr., Mencer and MacPhail, sitting as a panel of three.

*Robert J. Nolan, Miller, Nolan and Cali,* for appellants.

*John P. Pesota,* with him *Timothy J. Carson* and *Joseph B. Sturgis,* of counsel, *Saul, Ewing, Remick & Saul,* for appellees.

OPINION BY JUDGE MACPHAIL, June 27, 1980:

The Mid Valley Taxpayers Association and individual taxpayers in the Mid Valley School District (Appellants) filed a suit in equity with the Court of Common Pleas of Lackawanna County to enjoin the Mid Valley School District, the individual members of the Board of that School District, the Mid Valley

School Authority, and the individual members of that Authority (collectively, School District) from commencing with a construction project for a new school facility. The School District filed an answer to Appellants' complaint, admitting most of the factual allegations therein and then filed a motion for summary judgment which was granted by the Court of Common Pleas of Lackawanna County. This appeal followed.

Briefly, the facts before the court are drawn from those set forth in Appellants' complaint, admitted in the School District's answer, and alleged in unopposed supporting affidavits. In 1972, the School District initiated plans to construct a new junior-senior high school on a site known as the "Eddy Creek" site which land had been acquired for that purpose. Its plans were delayed, however, when a hold was placed on approval of the site for construction by the Pennsylvania Department of Education (Department). The Department had been advised by the Pennsylvania Department of Environmental Resources (DER) of several environmental hazards associated with the Eddy Creek site. However, in December of 1975, DER indicated it no longer objected to the School District's proceeding at its own discretion with the proposed construction due to the apparent remedying of the environmental problems.

Thereafter the School District submitted final drawings and specifications for the proposed · new building to the Department which approved the proposal in April of 1976. Bids for the project were solicited in September of 1976. From the inception of the project to that time, the School District incurred expenses in excess of $500,000, which sum included the purchase price of real estate and architectural and educational consultant fees. The bids were not accepted.

In December, 1976, and February, 1977, two of the School District's elementary schools were closed due to their unsafe condition by the Department of Labor and Industry. The School District was informed by the Department that costs of renovating those buildings would not be reimbursed from state funds.

By referendum in May, 1977, the School District asked its electorate whether it favored (1) remodeling all existing school buildings, if possible, (2) building a smaller junior-senior high school on an alternate site, or (3) building the proposed junior-senior high school on the Eddy Creek site. A majority of the voters favored the remodeling or renovating of· the existing buildings.

Subsequent to the referendum, the School District hired an architectural consultant to undertake studies of the feasibility of returning the two elementary schools to fit the needs of the School District. The consultant concluded, after consideration of the available alternatives, that new construction of one of the schools ultimately offered "the best advantage to plan for current and changing educational demands" of the School District and that substantial renovation "should also provide a first rate solution, though it offers the least flexibility in planning an up to date educational facility."[1]

On May 11, 1978, the School District voted to construct a secondary school on the "Marshwood" site, a different location. A public hearing on this proposed project was held in November, 1978. In the spring of 1979, the School District authorized the purchase of

---

[1] The conclusions as to one of the elementary schools (the Dickson City School) are irrelevant to this suit, as the school was destroyed by fire prior to further major School District decisions regarding the school project. It should also be noted that the feasibility study did not touch on the possibility of renovating the existing junior-senior high school.

land and the financing of the project by proceeds from school revenue bonds. The School District also approved the sale of the Eddy Creek site and demolition of one of the elementary schools. Appellants' complaint was filed prior to commencement of construction at the Marshwood site.

Appellants argue on appeal (1) that the trial court made an error of law in failing to consider the School District's "knowing waste of assets" charge as a cause of action separate and beyond that of "abuse of discretion;" (2) that the trial court made an error of law in failing to give proper legal effect to the voter referendum held in May, 1977; and (3) that the trial court in view of the admitted facts had no basis for holding that the School District's actions did not constitute abuse of discretion.

Our review of the lower court's decision is limited to a determination of whether or not the court below abused its discretion or committed an error of law. *Sergi v. Pittsburgh School District*, 28 Pa. Commonwealth Ct. 576, 368 A.2d 1359 (1977).

We cannot find that the court below committed an error of law in refusing to recognize as a distinct cause of action Appellants' charges that the School District's actions constituted a knowing waste of assets. A cause of action asserting "abuse of discretion" by the School District necessarily encompasses any allegations that the School District knowingly wasted assets. Thus, we may safely assume that the charge of knowing waste of assets was considered by the trial court in determining whether the School District abused its discretion.

Neither can we find that the trial court has committed an error of law in ruling that the May referendum has no legal effect on the School District's decisions regarding its secondary school project. Appel-

lants argue that the "Taj Mahal Act," Section 1 of the Act of June 27, 1973, P.L. 75, 24 P.S. §7-701.1,[2] calls for such a referendum prior to the incurring of indebtedness to finance construction of a school. Appellants contend that the electors voted for renovation of existing buildings and thus did not give the required approval for the financing of new construction. The public hearing held subsequent to the referendum cannot be held to negate the results and effect of the referendum, according to Appellants.

We disagree. In the case at hand, the referendum was not of the type provided for and required by the Taj Mahal Act specifically requesting approval of the incurring of indebtedness to finance the construction of a school project. Rather, it was an advisory referendum which asked the voters to express their preference for one of three options regarding the secondary school project. The public hearing, on the other hand, *was* held pursuant to the Taj Mahal Act, in order to receive public comment on the maximum construction cost figure to be submitted by the School District to the Department. The fact that subsequently the lowest actual construction bids fell within that maximum construction cost figure affirmed after public hearing made it unnecessary for the School District to undertake a referendum prior to the incurring of indebtedness. Therefore, the trial court properly ruled that the

---

[2] Section 1 of the Act of June 27, 1973, P.L. 75, 24 P.S. §7-701.1, provides in pertinent part:

Except where the approval of the electors is obtained to incur indebtedness to finance the construction of a school project, the board of school directors of any school district of the second, third or fourth classes, shall not construct, enter into a contract to construct or enter into a contract to lease a new school building or substantial addition to an existing school building without the consent of the electors obtained by referendum or without holding a public hearing as hereinafter provided.

results of the referendum held in this case had no legal or binding effect on the School District's decision.

Appellants raise the third argument that the facts before the trial court clearly demonstrate that the School District has acted arbitrarily, has abused its discretion, and has committed itself to a wasting of assets. Appellants first declare that the School District's choice of new construction over the renovation-reconstruction of existing facilities and sites is an arbitrary decision and an abuse of discretion in view of the expressed preference of the voters and in view of the facts that renovation is significantly cheaper than new construction and that it provides a feasible solution to the School District's building needs.

Secondly, Appellants contend that if new construction is deemed appropriate, then the School District's decision to abandon the Eddy Creek site and acquire the Marshwood site at a cost of more than $100,000 and construct a school thereon amounts to abuse of discretion also. Appellants add that the School District is also guilty of acquiring excessive land which was held to be improper conduct by our Supreme Court in *Pittsburgh School District Condemnation Case,* 430 Pa. 566, 244 A.2d 42 (1968). Appellants cite the early Supreme Court decisions in *Lamb v. Reading,* 234 Pa. 481, 83 A. 362 (1912), and *Robb v. Stone,* 296 Pa. 482, 146 A. 91 (1929), as supportive of the above two charges of arbitrariness and abuse of discretion.

The School District is vested with the statutory authority to establish suitable school facilities.[3] It is

---

[3] Section 701 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §7-701, provides in pertinent part:

The board of school directors of each district shall provide the necessary grounds and suitable school buildings to accommodate all the children between the ages of six and twenty-one years, in said district, who attend school.

well-established that courts will not intervene in such discretionary acts of school boards when the school board or school district is acting in good faith within the scope of its statutory authority. *Dochenetz v. Bentworth School District,* 6 Pa. Commonwealth Ct. 173 (1972). "[C]ourts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power." *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 573, 109 A.2d 331, 335 (1954).

Before a court will restrain a school board from performing certain acts, a plaintiff must sustain a heavy burden of proving bad faith, arbitrariness or abuse of discretion on the part of the board. This Court has stated that the burden of proof

is not properly borne by the act of proving that some alternative avenues of action might be better, or that a proposed plan of the plaintiffs was not considered. This burden is not properly borne by the act of proving that taxes will rise. It is not properly borne by the act of proving that the plan is lacking in wisdom, or business sense, or common sense, or any combination of all three.

To comprehend the burden of proof placed upon plaintiffs is to discern the difference between a lack of good judgment and wrongdoing. The former we are powerless to change, the latter must be proven before we can interpose to change that which has been done.

*Dochenetz, supra* at 184.

Our Court has often remarked that arbitrariness and caprice are not to be confused with bona fide differences of opinion and judgment. *Kennedy v. Ringgold School District,* 10 Pa. Commonwealth Ct. 191, 309 A.2d 269 (1973), and that unwise acts or mistaken

judgments will not usually amount to abuse of discretion. *Allen v. Uniontown Area School District*, 4 Pa. Commonwealth Ct. 183, 285 A.2d 543 (1971). It has also been held that the law will regard a school board's actions as an abuse of power when there is no room for difference of opinion and when the facts admit of no other conclusion than that the Board has been influenced by consideration other than the public interests, no matter what these may have been. *Allen, supra.*

The facts before the trial court do not show that the School District's decision to go with construction at Marshwood was made arbitrarily or in bad faith; and thus Appellants' heavy burden of proof has not been sustained. However one may choose to characterize the School District's action in incurring substantial expenses for a building project on one site and then proceeding with the purchase of land and construction of a school building on another site, clearly such action is not equivalent to nor evidence of arbitrariness or bad faith. The admitted facts suggest to us that the School District investigated and studied the options available to it and made a decision which it regarded as being in the public interest. Though Appellants may dislike or disagree with the result, they have not shown that the School District abused its discretion by basing its decision on considerations other than the public interest which would have rendered it susceptible to judicial interference. The Appellants and others elected the members of the school board and thus entrusted them with decision-making responsibilities. To register their dissatisfaction with a good faith decision of the School District, Appellants must now resort to the polls.

We find the facts in the earlier cases of *Lamb v. Redding, supra,* and *Robb v. Stone, supra,* to be sufficiently different to render the decisions in those cases inapplicable to the one now before us. In those

cases, our Supreme Court concluded that the board's action was based on selfish and improper motives not related to the public welfare or public interest, facts not present in the case before us now.

Order affirmed.

ORDER

AND Now, this 27th day of June, 1980, the order of the Court of Common Pleas of Lackawanna County, dated June 22, 1979, denying the motion for summary judgment of the Mid Valley Taxpayers Association et al. and granting the motion for summary judgment of Mid Valley School District et al. is hereby affirmed.