433 A.2d 72

**Floyd SCHRECENGOST, Dwight McKinley, Willard Kimmel and Dwight Claypoole, Appellants,**

v.

**ARMSTRONG SCHOOL DISTRICT, Anton J. Brence and the Armstrong School District Board of Directors.**

Superior Court of Pennsylvania.

Argued Nov. 11, 1980.

Filed July 31, 1981.

294

J. D. Heim, Kittanning, for appellants.

Robert D. Hazlett, Pittsburgh, Robert Pryde, Kittanning, for appellees.

Before HESTER, BROSKY and VAN der VOORT, JJ.

HESTER, Judge:

■ In this equity action, appellants, taxpayers of the Armstrong School District, seek to enjoin the district school directors from implementing their long range development plan for upgrading and improving the district's school facilities, including the construction of two new schools. Following a hearing below, the court filed an adjudication denying relief and dismissing the complaint. Appellants' exceptions were thereafter denied and a final decree entered, following which the instant appeal was taken. We now affirm.[1]

The pertinent facts may be summarized as follows. Beginning in 1977, the appellee School Board began formulating plans to bring its school buildings up to standards required by the Pennsylvania Department of Labor and Industry and to provide for much needed classroom space. This long range plan envisioned the construction of two new schools—West Hills secondary and Ford City secondary. Additionally, six existing school buildings were marked for alterations, renovations, and improvements. The Board hired an architect, Robert T. Scheeren, who studied the existing facilities and outlined for the Board the long range plan, projecting a cost of $24 million. Mr. Scheeren advised the Board that if they simply remodeled the Ford City school, instead of building a new facility, they could realize a savings of approximately $1,100,000. The Board eventually decided in favor of constructing a new school because it needed the flexibility of a new facility as well as the added space.

1. Jurisdiction over this appeal more properly rests in the Commonwealth Court. Judicial Code, 42 Pa.C.S.A. § 762(a)(4); *Allen v. Uniontown Area School District*, 4 Pa.Cmwlth. 183, 285 A.2d 543 (1971). However, none of the parties have objected to our assumption of jurisdiction; hence, we will proceed to the merits. 42 Pa.C.S.A. § 704; Pa.R.App.P. 741, *Jost v. Phoenixville Area School District*, 267 Pa.Super. 461, 406 A.2d 1133 (1979).

To finance the huge construction cost, the School Board considered a number of alternatives, including application for funds through the State School Building Authority, but eventually decided to finance the project by means of a local school district bond issue. Various investment banking firms were interviewed and proposals were received before the Board selected Moore, Leonard & Lynch as the firm to consult in developing the financing aspects of the long range plan. At the time suit was instituted below, the Board intended to sell the bonds to Moore, Leonard & Lynch pursuant to a negotiated sale, as opposed to competitive bidding. The Board then proposed to invest the bond proceeds, in the principle sum of $22,500,000, in short term money market funds, pending actual need of the cash. Since the Pennsylvania Department of Education had not yet approved the Board's construction plans, as required by law; the Board thus hoped that the income generated by the money market investment could eventually be used in its building plans and reduce overall cost. Should the state authority disapprove any portion of the construction program, the Board would simply retire any unused bonds, pursuant to its optional five year in part call. It was admitted that several Board members had accepted dinners and other entertainment from representatives of Moore, Leonard & Lynch during the time that firm was interested in handling the bond issue. It was further stated that the proposed construction plan would cause an increase in taxes for residents of Armstrong School District, although the precise amount of the increase was impossible to project.

Before the Directors of the School Board could issue the bonds, appellants filed the instant equity action seeking to enjoin the Board from proceeding with the issue and from any further action in construction or gaining approval for construction of the proposed projects. Following a one-day hearing, relief was denied.

Recently, our courts have had occasion to consider the proper judicial function in cases of this type:

"In order for a court of equity to grant relief, it must clearly be shown that the school board acted outside the

scope of its statutory authority or not in good faith. It is only where the board transcends the limits of its legal discretion that it is amenable to the injunctive processes of a court of equity: *Detweiler v. Hatfield School District*, 376 Pa. 555, 556, 104 A.2d 110; *Regan et al. v. Stoddard et al.*, 361 Pa. 469, 474, 65 A.2d 240. *Spann v. Joint Boards of School Directors*, 381 Pa. 338, 349, 113 A.2d 281, 287 (1955).

"The burden of showing such a clear abuse of discretion is a heavy one. *Regan v. Stoddard*, 361 Pa. 469, 65 A.2d 240 (1949); *Hibbs v. Arensberg*, 276 Pa. 24, 119 A. 727 (1923) . . ."

*Allen v. Uniontown Area School District*, 4 Pa.Cmwlth. 183, 185, 285 A.2d 543, 544–5, (1971) quoting, *Landerman v. Churchill Area School District*, 414 Pa. 530, 200 A.2d 867 (1964).

This burden is not properly borne by the act of proving that some alternative avenues of action might be better, or that a proposed plan of the plaintiffs was not considered. The burden is not properly borne by the act of proving that taxes will rise. It is not properly borne by the act of proving that the plan is lacking in wisdom, or business sense, or common sense, or any combination of all three.

To comprehend the burden of proof placed upon plaintiffs is to discern the difference between the lack of good judgment and wrongdoing. The former we are powerless to change, the latter must be proven before we can interpose to change that which has been done.

* * * * * *

This area of the law is one of narrowly drawn lines and subtitles. Courts must be wary on encroaching upon the legislative prerogative. Only in those instances wherein arbitrariness, caprice and wrongdoing characterizes a board's act, will a court interfere. Short of that point is the line wherefrom "discretion" extends. Arbitrariness and caprice must not be confused with bona fide differences of opinion and judgment. The former are indices of

motivation and intention, while the latter, by definition, concede proper motivation and intention and differ only as concerns methods and modes of achievement and realization.

*Dochenetz v. Bentworth School District*, 6 Pa.Cmwlth. 173, 184, 185 (1972). See also, *Mid Valley Taxpayers Association v. Mid Valley School District*, 52 Pa.Cmwlth. 402, 416 A.2d 590 (1980); *Kennedy v. Ringgold School District*, 10 Pa. Cmwlth. 191, 309 A.2d 269 (1973).

■ The appellants have posited a number of instances where the Board members have allegedly abused their discretion. Principle among the appellants' complaints is the manner in which the Board decided to finance the building projects. We are urged to find an abuse of discretion in the directors' decision to sell the bonds through a negotiated sale, rather than competitive bidding.[2] However, as appellants concede, Pennsylvania law specifically permits the sale of bonds through a negotiated sale. There is no requirement that a governing body first offer the bonds for competitive bidding. See Local Govt. Unit Debt Act, Act of July 12, 1972, No. 185, 53 P.S. § 6780–301(a).[3] Further, the evidence at trial established that in recent years 95% of all bond sales in Pennsylvania are effected through negotiated sales. The fact that the method of sale chosen by the Board will be somewhat costlier does not mean there has been an abuse of discretion. See, *Dochenetz*, supra. As the lower court opined, we cannot find an abuse of discretion when the Board "chose the same method of selling bonds that approxi-

2. In competitive sales, bonds are advertised and bids are submitted by groups of dealers. The bonds are awarded to the group whose bid sets the lowest interest cost. In negotiated sales, on the other hand, terms are agreed upon with a single underwriting group to market an issue. R.R. 231a–233a.

3. This section provides:
   (a) Except as otherwise specifically provided in this act and subject the following subsection, bonds or notes may be sold at public sale or private sale by negotiation or upon invitation and at such price all as the governing body of the issuing local government unit shall determine. Bonds or notes may be conditionally sold before the final details of the series are fixed.

mately 95% out of one hundred other local governing bodies have been using in recent years." Op. at 11. Appellants contend that the Board did not explore other alternatives or make inquiry into the facts necessary to make an informed and intelligent judgment. The record does not support this argument. Indeed, the representative of Moore, Leonard & Lynch testified:

"If I may add at this point, and I have said this before at the public meetings at the School District, after eight and a half years in the business, I have never seen a School Board that has discussed and thought out and questioned as many things as this School Board has before they determined what they wanted to do."

R.R. 175a.

■ Appellants allege an abuse of discretion in the Board's plan to market the bonds before the construction projects had received required State approval, School Code, 24 P.S. § 7–731. Although not a common practice, we cannot find the Board's proposed course to be arbitrary or capricious. The Directors considered a number of avenues toward financing and only decided upon this plan after consultation with its solicitor and bond counsel. Should any of the projects not receive State approval, sufficient bonds may be recalled so that the debt service cost for any such rejected project may be terminated. Further, the decision to invest the bond proceeds in money market funds before the money is actually needed was likewise reached only after consultation with financial experts and deliberation among the Board members. Because of the existence of a so-called "inverse market", the district stood to earn substantial monies from its short-term investments which could serve to reduce ultimate construction costs. A review of appellants' various arguments reveals that they simply disagree with the actions of the Board and are unable to pinpoint actual "wrongdoing or arbitrariness". *Dochenetz,* supra, "Our courts have often remarked that arbitrariness and caprice are not to be confused with bona fide differences of opinion and judgment." *Mid Valley Taxpayers,* supra, 52 Pa. Cmwlth. at 410, 416 A.2d at 593–4.

Appellants argue that the School Board's proposal to invest the bond proceeds in the money market will subject the municipality to possible federal income tax liability. Normally, a school district is not permitted, under the Internal Revenue Code, to enter the bond market simply to make money. However, testimony at trial established that the Board is permitted to invest its funds at a profit for a temporary period if its intent is to obtain financing. Under such an arrangement, the income will not lose its tax exempt status. R.R. 158a. Even if the projects did not receive State approval, the income would continue to be exempt temporarily since the initial intent was to obtain financing. See, 26 U.S.C. § 103(c)(4)(A); IRS Regs. § 1.103–14. Appellants' fears of incurring tax liability are not supported by the record or the applicable statutes.

■ Appellants complain that the Board's decision to build two new schools is wasteful and will raise taxes for residents of the district. The Board considered the alternative of simply remodeling the Ford City School, but concluded that the advantages of having a new facility were sufficient to justify the additional $1,100,000 cost. Moreover, as the *Dochenetz* court observed:

As unpleasant as tax increases are to all taxpayers, the fact remains that taxes are a part of the price we Americans pay to live in a country where all of our children are entitled to an equal opportunity to receive a quality education.

6 Pa.Cmwlth. at 185.

■ At trial, appellants introduced a bill then pending before the Pennsylvania House of Representatives, House Bill 1111. This bill, if enacted, would permit a large school district, like Armstrong, to decentralize if the local school board, by a majority vote, would decide to do so. Appellants contend that the Board members failed to consider the potential impact of this bill upon the school district if the long range plan were implemented. However, the record clearly reflects that the school directors were well aware of the bill, had discussed it and considered it in their delibera-

tions. The bill's sponsor, Rep. Henry Livengood, of the 60th legislative district, (which embraces Armstrong County), testified that he received a request from the school board to consider the Armstrong School District in his study of the bill. Further, Mr. Livengood discussed the bill and its impact upon the area with individual board members. R.R. 182a–184a. Thus, the Board fully discharged its duty to "investigate, to inquire, to study, to ponder, and to finally decide the question, i. e., to exercise its lawfully mandated discretion." *Allen*, supra, 4 Pa.Cmwlth. at 188, 285 A.2d at 546. The fact that appellants disagree with the Board's conclusions does not permit us to find an abuse of discretion.

█ Finally, appellants point to the fact that some Board members received dinners and entertainment from personnel of Moore, Leonard & Lynch before that firm actually received the Board's business. Several of the school directors were closely cross-examined on this issue, yet appellants' counsel was unable to unearth any suggestion that bribery had occurred or that any board member was influenced in his decisions by these gratuities. The lower court, which observed the witnesses and could assess credibility, likewise found no improper influence. We will not disturb its ruling.

The final decree is affirmed.