The Borough of Clifton Heights et al. *v.* The School District of the Township of Upper Darby et al. Upper Darby School District (Incorrectly designated School District of the Township of Upper Darby) et al., Appellants. (3 Cases)

Argued June 8, 1977, before President Judge Bow-man and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt. Judge Kramer did not participate in the decision.

*Kenneth A. Clouse,* with him *Lewis B. Beatty, Jr.,* and *Butler, Beatty, Greer & Johnson,* for appellants.

*Barry C. Dozer,* with him *F. L. Guiliano,* for appellees.

*Michael I. Levin,* with him *William Fearen,* and *Cleckner & Fearen,* for amicus curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE WILKINSON, JR., September 9, 1977:

This case involves three consolidated appeals by the Upper Darby School District.[1] The rather narrow question it presents is whether the record established before the Court of Common Pleas of Delaware County supports that court's legal conclusion that the Upper Darby School Board (Board) acted in an arbitrary and capricious manner in the closing of the Clifton Heights Junior High School (Clifton Heights).

On May 27, 1976, the Board adopted two resolutions. These provided for (1) the closing of Clifton Heights effective the 1976-77 school year and the reassignment of its students to one of the two other junior high schools within the district, and (2) a redrafting of the secondary school attendance area boundaries within the district. The Borough of Clifton Heights, its officers in their capacity as such and

---

[1] The three appeals are from the lower court's:

(1) Order Entered Granting a Preliminary Injunction on June 18, 1976; the Order Granting Continuance until July 6, 1976; and the Order of July 8, 1976 Continuing said Injunction until a Full Hearing on the Merits of the Petition for Permanent Injunction,

(2) Final Order dated August 19, 1976,

(3) Order dated August 18, 1976 Dismissing Defendants' Preliminary Objections to Plaintiffs' Complaint.

as taxpayers, and various other taxpayers (Appellees), commenced this action in equity seeking injunctive relief restraining the implementation of these resolutions. The lower court issued an order granting a preliminary injunction and subsequent to a final hearing the injunction was made permanent. The court based its determination upon the conclusion that the evidence reflected such a lack of inquiry by the Board into the facts necessary to form an intelligent judgment that the decision to close Clifton Heights was arbitrary and capricious. We disagree and will reverse.[2]

Section 1311(a) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §13-1311(a) provides:

> The board of school directors of any school district may, on account of the small number of pupils in attendance, or the condition of the then existing school building, or for the purpose of better gradation and classification, or other reasons, close any one or more of the public schools in its district. Upon such school or schools being closed, the pupils who belong to the same shall be assigned to other schools, or upon cause shown, be permitted to attend schools in other districts.

This section vests broad discretionary power within school boards with regard to the closing of schools. Such decisions by a board are therefore not reviewable by the courts in the absence of fraud or the arbitrary and capricious exercise of their discretions.

---

[2] Appellants have also raised the issue of the standing of the Borough of Clifton Heights and its officers, as such, to challenge the Board's decision. Because the standing of the individual taxpayers is unquestioned and because we resolve the case on the merits in appellants' favor, we find it unnecessary to decide the standing issue at this time.

*Crist v. Rayne Township School District,* 145 Pa. Superior Ct. 438, 21 A.2d 417 (1941) (construing Section 1406 of the School Code of 1911, Act of May 18, 1911, P.L. 309, re-enacted without material change as Section 1311 of the Public School Code of 1949). As stated by the Pennsylvania Supreme Court in *Landerman v. Churchill Area School District,* 414 Pa. 530, 534, 200 A.2d 867, 869 (1964):

> In order for a court of equity to grant relief, it must clearly be shown that the school board acted outside the scope of its statutory authority or not in good faith. 'It is only where the board transcends the limits of its legal discretion that it is amenable to the injunctive processes of a court of equity.' (Citations omitted.)

In applying this standard, the Pennsylvania Supreme Court stated that a school board transcends the legal limits of its discretion when it makes a decision in ignorance due to a lack of inquiry into facts necessary to form an intelligent judgment. *Zebra v. Pittsburgh School District,* 449 Pa. 432, 296 A.2d 748 (1972). We do not believe that such occurred in the present case.

An examination of the record confirms the lower court's finding that at least five reports or studies played little or no role in the Board's decision to close Clifton Heights. The data contained in these studies was simply not available, not considered, or not considered in detail by the Board. More important to our analysis, however, are the several other facts established by the record with regard to these five "outstanding reports." First, the conclusions, although not the details, of the study referred to as the Maines Study, were put before the Board. The focus of this report centered on the economic impact of the closing of Clifton Heights. Second, the so-called Long Range Planning Report involved a study which is statutorily

required to be periodically updated. At any point in time, therefore, this report can be considered to be "outstanding." Finally, two of the remaining three reports involved architectural and mechanical studies. One of these studies was of the structural soundness of the Clifton Heights building, and the other was of the proposed receiving school for reassigned students. While the relevancy of these "outstanding studies" to a decision to close a school cannot be doubted, their indispensability to the Board's decision at issue has not been established.

The Board's decision to close Clifton Heights was based upon two considerations, declining enrollment and financial savings. We believe that both of these reasons were intended by the Legislature to be encompassed by Section 1311 of the Code and available to school boards as a basis upon which to close a school facility. As to these two considerations, our review of the record discloses that the Board had before it and considered extensive data contained in numerous reports and studies.

The record clearly shows that the closing of Clifton Heights was contemplated as early as 1969. The Board therefore had the benefit of the Long Range Planning Reports from 1969 and 1972. The Board considered in 1974 a report on the physical plant at Clifton Heights referred to as the Fuhr Report. Also in 1974, the Board members discussed a study on enrollment trends in the Upper Darby School District done by Temple University. In late 1975, the Board commissioned and later received a further study of declining enrollments, known as the Engelhardt Study. With the background of these and other studies and reports, the Board commenced serious reconsideration of the future of Clifton Heights in April of 1976. Quite properly, it held public meetings on May 4 and 12 of 1976. A report of cost savings by the closing

of Clifton Heights was submitted by the Superintendent of Schools. The culmination of these various considerations was the decision on May 27, 1976 to close Clifton Heights.

The record thus reveals a long and deliberate process by the Board before arriving at its decision to close Clifton Heights. The Appellees seek, in effect, to require that this process be drawn out until every scrap of data of any possible relevance has been fully considered by the Board. This Court, however, in *Allen v. Uniontown Area School District*, 4 Pa. Commonwealth Ct. 183, 188, 285 A.2d 543, 546 (1971), stated:

> [A] school board is required to investigate, to inquire, to study, to ponder and to finally decide the question, i.e., to exercise its lawfully mandated discretion. This process leading up to the actual exercise of discretion cannot be unending. To demand such an unending process is in itself an arbitrary and capricious and wholly unreasonable expectation. There must be a time after which a school board is entitled to arrive at a decision and thereafter enter into an executory stage, without being stymied at every turn by the differences of opinions of others.

The record simply reveals no lack of inquiry such as to support the legal conclusion that the Board's decision to close Clifton Heights was arbitrary and capricious. We reverse.

Judge KRAMER did not participate in the decision in this case.

### ORDER (1251 C.D. 1976)

Now, this 9th day of September, 1977, the order of the Court of Common Pleas of Delaware County in the above-captioned matter enjoining the Upper Darby

School District from closing the Clifton Heights Junior High School and reassigning its students pursuant to the Resolutions of May 27, 1976 is hereby reversed.

ORDER (1577 C.D. 1976)

Now, this 9th day of September, 1977, the order of the Court of Common Pleas of Delaware County in the above-captioned matter enjoining the Upper Darby School District from closing the Clifton Heights Junior High School and reassigning its students pursuant to the Resolutions of May 27, 1976 is hereby reversed.

ORDER (1595 C.D. 1976)

Now, this 9th day of September, 1977, the order of the Court of Common Pleas of Delaware County in the above-captioned matter enjoining the Upper Darby School District from closing the Clifton Heights Junior High School and reassigning its students pursuant to the Resolutions of May 27, 1976 is hereby reversed.