## Alman v. Fox Chapel Area School District

*Harvey J. Eger* and *Jerome Iwler*, for plaintiffs.
*Edward J. Van Allen*, for defendants.

ROSS, *J.*, December 7, 1977—Plaintiffs, Daniel G. Alman and Jane H. Alman, parents and natural guardians of their minor children, Karen Alman and Richard Alman, filed a complaint in equity naming as defendants the Fox Chapel Area School District, its district superintendent, James M. Burk, its senior high school principal, Robert D. Myers, and the Fox Chapel Area School District Board of School Directors. Plaintiffs ask for an injunction restraining defendants from enforcing a 1961 school district resolution barring students at the Fox Chapel Senior High School from driving to or from school, from parking on school property during school hours, from riding to school in a vehicle not operated by a parent and from driving a vehicle to within walking distance of the school and walking from there. Plaintiffs ask that a special exception be made to allow Karen Alman, a licensed Pennsylvania driver, to drive to and from the senior high school which she attends, to park on school grounds during school hours, to be accompanied while driving by her brother, Richard, and to allow Richard to drive to and from school and park there during school hours once he secures his operator's license. Plaintiffs ask the court to order the school district to provide bus transportation for the minor plaintiffs within a reasonable distance from their home so long as they are not allowed to drive. It is asserted plaintiffs need immediate relief by way of preliminary injunction because, unless Karen can drive, she and her brother have no safe way of getting to and from school and, if they drive, they will be suspended and suffer irreparable harm.

After the court refused an ex parte preliminary injunction, defendants moved for a dismissal of the complaint on the ground it failed to aver that the

defendant board acted contrary to law, outside the scope of its statutory authority, in bad faith or in an arbitrary, capricious or unreasonable manner.

Upon being given leave, plaintiffs amended their complaint to allege that the defendant board acted contrary to the Public School Code of March 10, 1949, P.L. 30, secs. 1331 and 1362, as amended, 24 P.S. §§13-1331 and 13-1362, in failing to provide transportation for the minor plaintiffs who must walk to and from school on "hazardous" roads. The amended complaint asserts the board acted outside the scope of its authority in finding Fox Chapel Road and Highland Road not hazardous. It is contended that section 1362 of the Code, 24 P.S. §13-1362, specifically mandates that only the Bureau of Traffic Safety of the Pennsylvania Department of Transportation may determine whether or not a school district road is hazardous and that the board acted capriciously, arbitrarily, unreasonably and in bad faith in failing to have the Bureau of Traffic Safety evaluate and certify as hazardous Field Club and Highland Roads and in denying minor plaintiffs' request for permission to drive to and from school.

The hearing on the complaints and motions was held October 20 and 27, 1977. Before the court now are plaintiffs' prayer for preliminary injunction and defendants' motion for its denial and a dismissal of the complaints.

## THE FACTS

The court finds the following facts on the basis of the evidence presented to it.

In 1961, the Fox Chapel Area School District, a school district of the second class located in Allegheny County, Pa., through its board of school di-

rectors, adopted regulation 10-21 which provides:

*"Use of Automobiles*

"Pupils are not permitted to drive automobiles to regular school sessions. This regulation also forbids driving and parking to within walking distance of the school. Since sufficient bus transportation has been provided, it is not necessary for students to drive.

". . .

"[N]o student is to be driven to or from school grounds in a car unless the driver is a parent. No other person may be the driver.

"Violation of the School Board ruling will result in a suspension of not less than three (3) days.

"Students in the Work Experience Program must register their automobile with the designated assistant principal . . ."

Students in the Work Experience Program (employed students) are exempted from the regulatory restrictions.

The regulation was adopted out of consideration for student safety, to prevent traffic congestion at school opening and closing times and hot-rodding, to discourage smoking in vehicles or students leaving the school grounds during school hours, to deter outsiders from coming on school property and to prevent students from riding with other persons without their parent's approval. The school has parking spaces for 480 vehicles. School enrollment is 1,670 students. One student was killed on the school parking lot riding a vehicle not his own.

Plaintiffs moved into the Fox Chapel Area School District in October 1976. They live at 927 Field Club Road, Fox Chapel Borough. Karen Alman is 16 and an eleventh grade student in the

defendant district's senior high school where her 15-year-old brother, Richard, is a tenth grade student. Karen has been licensed to operate a motor vehicle since May, 1977.

The Almans' home is one and two-tenths miles from the high school, which is also located on Field Club Road. Their residence is located one and one-tenths miles from the nearest school bus stop on Highland Road. The Alman children may ride the bus because their home is closer to the bus stop than to the school. Most children in the Forest area of the school district where the Almans reside walk to school, preferring not to take advantage of the bus transportation available.

Transportation by cab is available to the Alman children to school but has never been utilized by them because, in addition to their parents' transportation, they have received rides to school with other parents. Richard has walked once and Karen twice to school from their home during their attendance at senior high school.

Plaintiff, Daniel Alman, is employed in the Oakland area of Pittsburgh. When the Almans first moved to Fox Chapel, Jane H. Alman (mother of the minor plaintiffs) was not employed. Richard at that time rode a school bus to the junior high school and the Almans provided school transportation for Karen. About March of 1977, Mrs Alman began to work at her husband's place of business and, if no other way was possible, they brought their daughter home from school by driving from their Oakland place of business to the senior high school.

The Almans drive to work each morning at 9 a.m. one hour and ten minutes after the high school session begins. Mr. Alman prefers not to drive the children because he does not want to leave earlier.

In May 1977, after Karen secured a motor vehicle operator's license, Daniel Alman contacted defendant, Robert D. Myers, to obtain permission for Karen to drive to and from school. Mr. Myers indicated the regulation against students driving would be enforced as to Karen. Daniel Alman then requested defendant, James M. Burk, to grant an exception from the regulation to Karen Alman and when that was refused wrote the school board asking permission for Karen to drive. The school board did not respond.

Soon after the new school year began in the fall of 1977, Karen Alman drove to school accompanied by Richard (now a senior high school student), although she had been earlier apprised of the regulation against driving. She was called to the school office and informed by Robert D. Myers that she would be suspended for three days if she drove again to school.

Daniel Alman thereupon contacted defendant Myers and after his request for an exception in favor of his daughter was refused, he on a Friday in late September 1977, telephoned Nancy Jane Edelman, president of the defendant school board. He explained to Mrs. Edelman that Karen would be suspended if she drove to and from school. The reason advanced by Mr. Alman at this time in support of his daughter's driving was his concern "that his name was very visible to the public," that "anybody might be hiding behind a bush" along Field Club Road and that he "feared for the safety of his daughter and wanted her behind metal." Mrs. Edelman reiterated to him the policy of the board as enunciated in the regulations as to student drivers.

Shortly thereafter, Mr. Alman appeared at the regular meeting of the school board in October 1977 to request a review of its policy in relation to

plaintiffs. He asked (1) the diversion of a bus four miles so as to stop nearer to plaintiff's residence and the homes of other students living in the so-called Forest area of the district; (2) the grant of permission to form under the board's supervision car pools of students currently designated as "walkers" whose path to school lay along hazardous roads; and (3) the grant of a specific exception for Karen to drive Richard to and from school by reason of Karen's driving record.

The school board gave no answer to the Alman proposal that evening, refused to hold a special meeting thereon and did not indicate to him when a decision would be rendered. The present suit was initiated shortly thereafter.

The defendant school board at present provides bus transportation to high school students who reside more than one and one-half miles from the high school or who live, as do the Almans, closer to a bus stop than to the school. The school board policy as to busing in the Forest area now relevant was arrived at after a transportation review of busing policy dated September 28, 1976, was prepared at board direction. Parents from the Forest area, where plaintiffs live, and from similar areas had requested a change in busing policy as to their children. A large number of district areas were studied in the fall of 1976 in an effort to analyze the situation of students for whom busing was not then provided and for whom parents had requested such transportation. Believing it had a responsibility to the school district as a whole rather than to fragmented and particular areas, the board requested a comprehensive study of not only the Forest but of all other comparable areas.

The transportation review was undertaken by

Gilbert Damico, transportation director of the school district, and by Dr. Jack Roush, the assistant superintendent. The review contained a map of measured distances of all areas of the district where persons had raised questions as to student transportation in order to get a view of the school district as a whole.

It considered 19 areas about which complaints had been received and the problems involved as to each area and made recommendations as to solutions to the problems. As to the walkers to the senior high school, the report stated that 375 students "walk to . . . school over hilly, narrow, extremely well traveled roads, none of which have sidewalks . . . Since all of these students must walk on Field Club Road which is narrow, without sidewalks and heavily traveled, enough additional buses would have to be added to accommodate all of these students."

Other testimony indicated that Mrs. Edelman knew that the area of Field Club Road, which is referred to as "heavily traveled" in the report, is that portion on the side of the high school away from plaintiffs' residence and not the area between the school and their residence which is lightly traveled. She had lived in the area and walked it many times. Mrs. Susan Howell of the board also knew the area, had walked it as had Mrs. Edelman and, like Mrs. Edelman, did not believe it to be hazardous.

The transportation review once completed was presented at the regular meeting of the board of school directors on November 19, 1976, but a week prior to the meeting a copy of the report had been given to Mrs. Edelman and other board members who attended a committee meeting. Mr. Damico

appeared before the board to answer questions relating to the report prior to the decision as to whether or not there should be a change as to busing provided to the Forest and other areas of the school district. The transportation report was considered, discussed and reviewed in its entirety before the school board, on November 15, 1976, accepted it. At that meeting, the board decided after a review of the contents of the report not to change its previous decision as to the busing of high school students within the area of plaintiffs' residence. Board members such as Mrs. Edelman with a familiarity from residence and an actual walking experience on Field Club Road also took into account their personal knowledge of conditions in making a decision as to transportation to plaintiffs' area. They found the volume of traffic to be light. The board also took into account, in addition to the report recommendations and personal knowledge, the cost of additional busing covered by the report which was estimated at $65,000 per year. The decision also was based on the fact that school starting times would have to be rearranged, that time and mileage would be added to existing bus runs and that bus stop schedules would have to be changed over the whole district, as well as the facts relating to the maturity of the walking students.

Mrs. Edelman's children, who attend the senior high school, are not provided with transportation and walk to school along the portion of Field Club Road which is heavily traveled and located on the side of the school away from plaintiffs' residence.

Six traffic studies of Field Club Road by school officials during the times students would be walking to or from school (7:15 to 7:45 a.m. and 2:15 to 2:45 p.m.) indicated that 1, 6, 11, 9, 16, 12 or 10 vehicles traveled the road during the times

studied. On the basis of these studies the road was not considered hazardous.

In 1973, defendant school district had requested the Bureau of Traffic Safety to study certain district roads along which children were being transported by school bus for the purpose of certifying the roads as hazardous in order to secure partial reimbursement to the district from State moneys for the transportation already furnished. The school district never requested the bureau to study the portions of Highland Road or Field Club Road at issue in the instant case or other roads not so certified, because the board in the first instance had to weigh factors and make a choice among all roads as to which particular roads posed an extreme problem and warranted possible study.

In determining whether or not to ask for a Bureau of Traffic Safety survey, the board took into consideration the type of road, its conditions, the type and amount of its vehicular traffic, the maturity of the student walkers, how the study would fit into the transportation schedule, relevant policies, past transportation scheduling policies and cost. Busing is provided for young students over roads where busing is not given to older pupils.

During the pendency of the litigation and after the first day of hearing, plaintiff had an employe of the Bureau of Traffic Safety observe Field Club Road on October 26, 1977, from 10:30 a.m. to 11:30 a.m., long after walkers had arrived at school. The witness did not observe the number of vehicles passing on the road then or at the time students walked to and from school but because the road had a berm of less than 15 feet and because children must sometimes walk on the roadway, he declared it hazardous.

Many roadways in the school district, including

Highland and Field Club Roads, are narrow, winding country lanes with no berms over which students must walk either to get to school or to the nearest bus stop. Children ride bicycles, play football and field hockey along the Field Club Road area in dispute. Richard Alman has walked along Field Club Road a couple hundred times and sometimes has crossed it for personal and recreational purposes.

Field Club Road contains signs warning motorist to "Watch Children." During the past five and one-half years, 22 vehicular accidents have occurred on the relevant portion of Field Club Road, none of which involved pedestrians and only 15 of which could have involved pedestrians. Eight of 11 of the most recent accidents involved *drivers* of high school age and none of the remaining occurred when school was is session. One accident occurred at the school parking lot. In May and June 1977, three or four vehicles per day out of 20 observed by a township police officer were speeding on the road but none have been observed by him since then. The officer knew of no pedestrians having been injured on Field Club Road by a vehicle within the last five years. No evidence was produced of any pedestrian accident on Field Club Road or Highland Road.

## SUMMARY OF FACTS

The Fox Chapel Area School District provides bus transportation to the minor children plaintiffs who must walk one and one-tenth miles to the bus stop along Field Club and Highland Roads, country lanes, or the children may walk one and two-tenth miles to the school along Field Club Road.

They have, in fact, walked no more than two times to school since moving to Fox Chapel in October 1976.

Plaintiffs assert they must be allowed to drive to school or be provided with more convenient busing because Field Club and Highland Roads are hazardous to their safety. No pedestrian accidents were shown to have occurred on either road.

During litigation, a Bureau of Traffic Safety representative, who studied Field Club Road for one hour, at a time the road is not used by students, and who made no traffic counts, certified the road as hazardous because it had less than a 15-foot berm and required some walking on the roadway.

The evidence indicated eight students have been injured when *driving* on Field Club Road, none when walking.

The School board set up its present busing route after a comprehensive study was made of the district as a whole and after consideration of the study as well as personal knowledge of the areas and considerations of cost, the massive number of changes required and the ages of walking students. The school board also had previously determined what roads were to be studied by the Bureau of Traffic Safety for certification as hazardous after a consideration of similar factors in order to secure partial State reimbursement.

The present school regulation prohibiting student drivers was based mainly on considerations of students' safety and discipline and the lack of parking space for all possible drivers.

## THE LAW

The present action has been pursued under sections 1331 and 1362 of the Public School Code of

March 10, 1949, supra, 24 P.S. §§13-1331 and 13-1362. Section 1331 relates to students residing in third and fourth class districts and not to districts of the second class which is the classification of the defendant district. Even if section 1331 applied to the defendant district, it requires bus transportation for students residing two or more miles from their school and, therefore, is inapplicable as to plaintiffs who reside one and one-tenth miles from the school.

Under section 1330(5) of the Code, 24 P.S. §13-1330(5), a second class district cannot enforce compulsory attendance laws against students who reside two or more miles from the high school who do not receive free transportation. This section has been interpreted not to impose a duty on second class district to furnish such free transportation: Connell v. School Directors of Kenneth Township, 3 Chester 48, affirmed 356 Pa. 585, 52 A.2d 645, appeal dismissed 332 U.S. 748 (1947). Section 1361 of the Code, 24 P.S. §13-1361, in discretionary language, permits the board of school directors in any district out of district funds to "provide for the free transportation of any resident pupil to and from the . . . secondary school in which he is lawfully enrolled . . ."

The power granted school districts under this section is plenary.

Absent a showing of bad faith or abuse of discretion, the board has a choice whether or not to provide transportation for resident students: Roberts v. School District of Scranton, 462 Pa. 464, 473, 341 A.2d 475, 480 (1975).

Section 1362 of the Code, 24 P.S. §13-1362, was amended by the Act of December 29, 1972, P.L. 1726, to provide that second class school districts

could not enforce compulsory attendance laws against students who resided two to three and one-half miles from school if students had to walk along a hazardous road to reach a bus stop and shelter established at the two-mile limit. The Bureau of Traffic Safety was to certify the road as hazardous.

The amendment was designed to provide reimbursement to school districts who chose to provide transportation to students using hazardous routes. To prevent school districts from considering all routes as hazardous, the legislature provided that reimbursement could follow only from bureau certification.

The amendment does not change the discretionary power of a second class school district not to provide bus transportation whether or not a pupil's route to school is hazardous: Roberts v. School District of Scranton, supra.

In order for a court of equity to intervene with respect to a discretionary power statutorily granted a school district, " 'it must clearly be shown that the school board acted outside the scope of its statutory authority or not in good faith. "It is only where the board transcends the limits of its legal discretion that it is amenable to the injunctive processes of a court of equity" ' ": Borough of Clifton Heights v. School District of Township of Upper Darby, 31 Pa. Commonwealth Ct. 523, 527, 377 A.2d 836, 838 (1977).

It was further stated in Borough of Clifton Heights v. School District of Township of Upper Darby, supra, 527 of 31 Pa. Commonwealth Ct., 838 of 377 A.2d:

"[A] school board transcends the legal limits of its discretion when it makes a decision in igno-

rance due to lack of inquiry into facts necessary to form an intelligent judgment. Zebra v. Pittsburgh School District, 449 Pa. 432, 296 A.2d 748 (1972)."

So long as the school board has pursued a long and deliberate process before arriving at its decision, there is no requirement that the process be further drawn out "until every scrap of data of any possible relevance has been fully considered by the Board": Borough of Clifton Heights v. School District of Township of Upper Darby, supra, 529 and 839.

## THE LAW AS APPLIED TO THE FACTS

In the instant case, there is no statutorily mandated duty that the school district provide bus transportation for the minor plaintiffs: Connell v. School Directors of Kennett Township, supra. The only issue is whether (1) in refusing to allow Karen Alman an exception to the school regulation forbidding students driving to and from school or parking on school grounds, or (2) in determining that the nearest school bus stop to the Alman residence would be one and one-tenth miles away on Highland Road, or (3) in not having the Bureau of Traffic Safety certify Field Club and Highland Roads as hazardous so that partial reimbursement for busing thereon could be received, the defendant board acted capriciously, arbitrarily and not in good faith.

There is no assertion by plaintiff that the regulation of the school district restricting student driving is beyond the scope of board authority or the result of arbitrary, capricious action. Plaintiffs assert that the application of this regulation to Karen and Richard is improper because their safety has been threatened by its enforcement. Plaintiffs, however, have produced no evidence to support

this assertion and, having failed to meet their burden of proof of a need for an exception, their contention must fail. In failing to prove any harm has or will come to minor plaintiffs, the request for injunctive relief must also fail.

With respect to the alleged arbitrary and capricious and bad faith decisions of the school board (1) not to change the busing patterns in the area of plaintiffs' residence, and (2) not to have the Bureau of Traffic Safety study Field Club and Highland Roads when other roads were studied for purposes of busing costs reimbursement, the evidence is clear that the decisions were based on the most careful study and consideration of many factors and facts, including personal knowledge, costs, safety, convenience and changes required.

". . . [A] school board is required to investigate, to inquire, to study, to ponder and to finally decide the question, i.e., to exercise its lawfully mandated discretion. This process leading up to the actual exercise of discretion cannot be unending. To demand such an unending process is in itself an arbitrary and capricious and wholly unreasonable expectation. There must be a time after which a school board is entitled to arrive at a decision and thereafter enter into an executory stage, without being stymied at every turn by the differences of opinions of others": Allen v. Uniontown Area School District, 4 Pa. Commonwealth Ct. 183, 188, 285 A.2d 543, 546 (1971).

There was no lack of inquiry by the board in 1976 as to whether or not the existing bus transportation into the Forest should be altered. There was no lack of inquiry by the board in 1973 as to which roads should be studied by the Bureau of Traffic Safety for certification as hazardous. There was no proof, in fact, that the failure of the board to grant

a special exception to its regulation on behalf of Karen Alman in any way presents a hazard to her safety. The Almans, in fact, waited for no final response by the board as to their exception request before beginning this action.

Nothing in the record warrants a conclusion that the actions of defendants complained of were arbitrary, capricious, contrary to law or done in bad faith.

Plaintiffs' request for preliminary injunction is denied and their complaint is dismissed.

### ORDER

And now, December 7, 1977, after hearing on the complaint of plaintiffs, Daniel G. Alman, Jane H. Alman, Karen Alman and Richard Alman, minors, praying for a preliminary injunction issued to defendants, Fox Chapel Area School District, James M. Burk, Robert D. Myers and the Fox Chapel Area School District Board of School Directors, and after motion of defendants to deny the prayer for preliminary injunction and to dismiss plaintiffs' complaint, it is ordered, adjudged and decreed that the prayer of plaintiffs for preliminary injunction is hereby denied and the complaint of plaintiffs is dismissed.